**UNITED STATES of America ex rel. Donald E. STARNER, Petitioner,**

v.

**Harry E. RUSSELL, Supt., State Correctional Institution, Huntingdon, Penna., Respondent.**

No. 804.

United States District Court
M. D. Pennsylvania.

Nov. 7, 1966.

Donald E. Starner, pro se.

Richard C. Snelbaker, Dist. Atty., Cumberland County, Carlisle, Pa., for respondent.

## OPINION

FOLLMER, District Judge.

Donald E. Starner, an inmate at the State Correctional Institution, Huntingdon, Pennsylvania, has filed a Petition for Writ of Habeas Corpus, in forma pauperis, in this Court. The grounds on which he bases his allegation that he is being held in custody unlawfully are as follows: (1) On a previous Petition for Writ of Habeas Corpus, he was given a new trial, which relief he did not request; (2) Certain evidence should have been excluded at his second trial [1] and (3) The second sentence was harsher for no discernible reason.

Petitioner filed a Petition for Writ of Habeas Corpus in the Court of Common Pleas of Cumberland County, Pennsylvania, in relation to his second trial, on the same grounds raised here. On January 11, 1966, that Petition was dismissed. The Pennsylvania Superior Court [2] and the Pennsylvania Supreme Court affirmed the dismissal. Petitioner has exhausted his available State remedies.

In the instant case, Rule to Show Cause issued, Answers were filed by the Respondent and the District Attorney of Cumberland County, Petitioner filed a Traverse and this Court has had the benefit of the records of the State criminal proceedings and the State habeas corpus proceedings.

Petitioner's allegations are essentially as follows: On or about April 14, 1963, he was arrested on multiple charges of forgery and burglary. After his preliminary hearing he gave certain samples of his handwriting to postal inspectors and a policeman. On May 17, 1963, Petitioner was sentenced to a term of imprisonment of two (2) to six (6) years on his plea of guilty to eight (8) counts of forgery and two (2) counts of burglary.

Subsequently, he submitted a Petition for Writ of Habeas Corpus to the Court of Common Pleas of Cumberland County. By opinion dated March 4, 1964, that Court granted the Petition, vacated the conviction and sentence, and granted a new trial.

On October 6, 1964, Petitioner was tried by jury on the eight (8) counts of forgery and the two (2) counts of burglary. He was convicted on the eight (8) counts of forgery. Subsequently, he received a sentence of imprisonment for three and one-half (3½) to seven (7) years. It is this sentence which he is now contesting in this Petition for Writ of Habeas Corpus.

The first ground which Petitioner alleges concerns the granting of a new trial. He claims that since he was seeking release from his first sentence that the Court of Common Pleas of Cumberland County could not "impose" a new trial upon him, but had to release him when it granted his Petition. He is also upset over the fact that he did not receive appointment of counsel during this first State habeas corpus proceeding.

Failure to appoint counsel in a habeas corpus proceeding does not violate a person's constitutional rights since a proceeding in habeas corpus is a civil proceeding, not a criminal proceeding. Moreover, there were no unusual circumstances present to require counsel. In fact, it is impossible to see what further services counsel could have performed for petitioner since his Petition was granted. Thus no constitutional right of Petitioner was infringed by the

---

1. His first conviction was on a plea of guilty.

2. Commonwealth ex rel. Starner v. Russell, 207 Pa.Super. 776, 218 A.2d 833 (1966).

failure to appoint counsel in the State habeas corpus proceedings. Rider v. Crouse, 357 F.2d 317 (10th Cir. 1966); Douglas v. Maxwell, 357 F.2d 320 (6th Cir. 1966).

■■■■ The remainder of his argument on this first ground is spurious. There is no automatic right to release simply because a Petition for Writ of Habeas Corpus is granted, and the granting of a new trial does not depend upon the Petitioner's request for it. He was still subject to custody under the indictments filed by the Commonwealth of Pennsylvania and the granting of a new trial was within the discretion of the Pennsylvania Court. See Irvin v. Dowd, 366 U.S. 717, 728–729, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Thus there is nothing to the first ground raised by Petitioner.

The second ground raised by Petitioner concerns the admissibility of certain evidence at the second trial. The primary question which is raised is whether his privilege against self-incrimination under the Fifth Amendment was violated when handwriting specimens, given to the authorities before his first plea, without the assistance of counsel, were introduced at the trial.

■■■■ "It is a well-established principle of law that a habeas corpus proceeding cannot be used as a substitute for an appeal." Buder v. Bell, 306 F.2d 71, 74 (6th Cir. 1962); United States ex rel. Washington v. Cavell, 251 F.Supp. 779, 780 (M.D.Pa.1966). However, it must be ascertained whether the allegations are just matters of error to be determined on appeal or whether they rise to the level of a denial of a constitutional right.

The main allegation concerning the handwriting specimens and the self-incrimination claim will be considered first. The privilege against self-incrimination has been discussed recently by the Third Circuit in connection with lineups. In Rigney v. Hendrick, 355 F.2d 710, 713 (3d Cir. 1965), it is stated, as follows:

" * * * The privilege against self-incrimination was analyzed by the Supreme Court in a classic opinion by Mr. Justice Holmes, Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), where it was said:

" ' * * * [T]he prohibition of compelling a man * * * to be witness against himself is a prohibition of the use of physical or moral compulsion to *extort communications from him*, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof.' Holt v. United States, supra at 252–253, 31 S.Ct. at 6. (Emphasis supplied.)

"Dean Wigmore discussed the method of identification as being in violation of the privilege against self-incrimination as follows:

" ' * * * [I]f, in other words, it [the constitutional inhibition] created inviolability not only for his physical control of his own vocal utterances, but also for his physical control in whatever form exercised, then it would be possible for a guilty person to shut himself up in his house with all the tools and indicia of his crime, and defy the authority of the law to employ in evidence anything that might be obtained by forcibly overthrowing his possession and compelling the surrender of the evidential articles,—a clear "reductio ad absurdum." ' 8 Wigmore, Evidence § 2263 at 363 (3d ed. 1940).

" 'Unless some attempt is made to secure a communication, written or oral, upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one.' 8 Wigmore, Evidence § 2265 at 375 (3d ed. 1940). See also annot., 18 A.L.R.2d 796 (1951); annot., 16 A.L.R.2d 1322 (1951); annot., 70 A.L.R.2d 995 (1960)."

In regard to the matter which is before this Court, it has been stated that the history of the privilege against self-incrimination suggests that the privilege is limited to testimonial disclosures. 8 Wigmore on Evidence § 2263, p. 378 (McNaughton rev. 1961). Thus to require a person to do an act, such as to speak for identification or to write for identification is not within the privilege because it is not *testimonial* compulsion.

There were no facts contained in the handwriting specimens that indicated either guilt or innocence of the crimes charged. The specimens were not "communications." The specimens were simply the writing of various names and words which could not be termed testimony. See Hartzell v. United States, 72 F.2d 569, 585 (8th Cir. 1934).

In another recent case involving the identification of an accused, the privilege against self-incrimination was discussed, making the distinction between compulsion and testimonial compulsion. United States ex rel. Stovall v. Denno, 355 F.2d 731 (2d Cir. 1966). In that case it was stated as follows:

> "The accused may even be forced to perform some physical act such as putting on eyeglasses, People v. Tomaszek, 54 Ill.App.2d 254, 204 N.E. 2d 30 (1964); submitting to a physical examination, McFarland v. United States, 80 U.S.App.D.C. 196, 150 F.2d 593 (1945); having a handkerchief put over his face to simulate his appearance at the time of the robbery, see Ross v. State, 204 Ind. 281, 182 N.E. 865 (1932) and Key v. State, 33 Okl.Cr. 92, 242 P. 582 (1925); or giving a blood sample. * * *" United States ex rel. Stovall v. Denno, supra, 355 F.2d at 737–738.

The requirement of physical acts was also discussed in Rigney v. Hendrick, supra, 355 F.2d at 714, wherein it is stated that: "The requirement that a suspect speak in answer to certain innocuous questions, propounded by the police for the *sole purpose of identification* of his voice, is not the type of 'communications'

that falls within the prohibitions established in Holt."

■ The sole purpose of obtaining the handwriting specimens was to identify the Petitioner's handwriting. There was no problem as to the authentication of the writings. This Court is firmly of the opinion that the Petitioner's privilege against self-incrimination was not violated in that requiring a suspect to write for identification purposes is without the privilege.

■ The remaining allegation relates to the introduction of a "Personal History Data" sheet in the handwriting of the Petitioner. Petitioner claims that this amounted to a denial of due process. If there were any error, it was a matter for appeal and is not a denial of due process.

■ The third ground raised by the Petitioner is that he was given a harsher sentence at his second trial in violation of his constitutional rights. Several facts are worthy of mention in this regard. Petitioner received his first sentence of two (2) to six (6) years imprisonment on eight (8) counts of forgery and two (2) counts of burglary. Yet his second sentence, which was only on the eight (8) counts of forgery was for three and one-half (3½) to seven (7) years imprisonment. After Petitioner's court-appointed counsel, Mr. Stuart, had noted the fact that less counts were involved at the second sentencing, the Court stated:

> "I think, Mr. Stuart, that you and your client are both aware that this court has always extended leniency on pleas of guilty that is not extended when people take their chances upon a trial."

In Patton v. State of North Carolina, 256 F.Supp. 225 (W.D.N.C.1966), the Court was presented with a similar situation. In that case it was stated:

> "On the facts of this case—where there is not one scintilla of evidence in the record to rationally support the imposition of a harsher penalty—the imposition of the same is held to be so

fundamentally unfair as to violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution. See: United States v. Wiley, 278 F.2d 500 (7th Cir. 1960); United States v. Boyce, supra [352 F.2d 786]. Harsher punishment may constitutionally be imposed at a second trial—but there must be a reason for it, and the reason must be discernible." Id., at 236.

Here we not only have a harsher sentence, but it was imposed for less counts than the original sentence. It is presumed that the first sentence was sufficient to protect society's interests. In reviewing the record, the apparent reason for the harsher penalty was because the State court extends "leniency on pleas of guilty," but does not when an accused has a trial. Such reasoning is untenable. The whole result simply inhibits the right to petition for a writ of habeas corpus and a new trial and unconstitutionally conditions that right. Society's interests were protected by the first sentence which was on two additional counts and there is no rational justification advanced for the imposition of a harsher penalty at the second trial.

The District Attorney relies on the case of Commonwealth v. Davis, 203 Pa. Super. 79, 198 A.2d 649 (1964) and states that since the former conviction was set aside that courts should "not inquire into the motives of a later and greater sentence where it comes within the limits fixed by law." I do not agree with the Pennsylvania Superior Court when it states that if the sentences were within the legal limits that there need be no inquiry into the court's reasons for the penalties imposed. The reasons stated above and those stated in Patton v. State of North Carolina, supra, clearly show this technical reasoning ignores a prisoner's constitutional rights. No prisoner should be punished for obtaining a new trial nor for pleading not guilty. The second sentence does this and clearly violates Petitioner's constitutional rights.

Accordingly, the Petition for Writ of Habeas Corpus will be granted, but the Commonwealth will be given an opportunity either to appeal from this grant of the Writ or to constitutionally resentence Petitioner. Execution of the Writ will, therefore, be stayed for a period of thirty (30) days and if at the end of that period of time the Commonwealth has neither appealed nor initiated proceedings to resentence Petitioner, the Writ will be executed and the Petitioner will be released.