**UNITED STATES of America ex rel. Henry D. HARRIS**

v.

**Edward HENDRICK, Warden County Prison.**

**No. M-69-207.**

United States District Court
E. D. Pennsylvania.

June 17, 1969.

George S. Pressman, Philadelphia, Pa., for relator, Mary Bell Hammerman, Philadelphia, Pa., co-counsel.

Joseph J. Musto, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

JOHN MORGAN DAVIS, District Judge.

Before the Court is a petition for a writ of habeas corpus. After a trial by jury in April 1966, the relator was found guilty on all 28 bills of indictment, wherein he was essentially charged with larceny, forgery, and uttering and publishing forged instruments. An aggre-

gate sentence of 20 to 40 months imprisonment was imposed. In November 1967, post-trial motions were denied. In August, 1968, the judgment of the trial court was affirmed, Commonwealth v. Harris, 213 Pa.Super. 714, 244 A.2d 163. In October 1968, the Supreme Court of Pennsylvania denied a petition for allowance of appeal. Then on April 7, 1969, appeal to the U. S. Supreme Court was denied.[1] Finally, the relator filed a petition for reconsideration of the sentence. This was denied by the trial judge, on April 30, 1969. During this rather extensive history of litigation, the relator has been free on bail. He commenced serving his sentence on May 5, 1969 but was again granted bail by this Court during the pendency of this proceeding. The four principal allegations of error will be individually considered.

### I.

Prior to the commencement of his first trial,[2] the relator filed a petition to suppress, directed against two separate categories of evidence.

### SEARCH AND SEIZURE.

The relator had been employed by the Sun Oil Company as a mail driver and mail room clerk, for about five years. Prior to his arrest, Sun Oil Payroll checks which had been drafted in the Philadelphia business office were forwarded through the mail room for distribution to Sun Oil employees throughout the country. An internal security investigation by Sun Oil Company revealed that some of these checks were never received by the payees, but were being fraudulently cashed in the Philadelphia area.[3] On January 14, 1963 at about 11:00 A.M. the relator was called into the Sun Oil office and interrogated by five company officials. As a result of the information which the officials

---

1. 394 U.S. 946, 89 S.Ct. 1286, 22 L.Ed.2d 483, October Term, 1968.

2. This case originally came to trial before Judge Thomas Reed, on November 8, 1965. However, two weeks later, the illness of Judge Reed required the with-

drawal of a juror. On April 19, 1966, the second trial commenced before Judge Raymond Pace Alexander. This trial lasted four weeks.

3. See Second Trial N.T. pp. 603–607; 633–638.

elicited from the relator, together with information which the company had obtained from other sources, the Philadelphia Police were notified. At approximately 1:50 P.M. two police detectives arrived. The interrogation then continued until approximately 5:00 P.M. During this session, the relator repeatedly asserted his innocence, although confronted with evidence (albeit largely circumstantial), to the contrary. No polygraph test was administered, although the relator had indicated his willingness to submit to such an examination. One of the police detectives testified that the relator was "obviously nervous and ill".

During the latter part of the afternoon the police requested the relator to authorize a search of his apartment. The conversation which ensued is reported in 203 Pa.Super. 143, at pp. 146–147, 199 A.2d 290,[4] and need not be repeated here. Suffice to say that the relator himself testified that he had no objection to the police searching his apartment.[5] The search uncovered some nineteen payroll check stubs and income tax notification slips, all bearing the names of other employees whose checks had been illegally cashed. The relator was then placed under arrest.

The Commonwealth continues to assert that although the search of the relator's apartment was without a warrant, it was not unlawful, since the relator had freely authorized the police to enter and so proceed.

In initially granting the motion to suppress, the court reasoned that the relator "was lured into a false sense of security by the repeated statements of his superiors as well as the officers that he was merely assisting in an investigation into the circumstances, and their repeated assurances that he was not under arrest prompted his giving permission to the search of his apartment."

(Opinion by Blanc, J. dated February 20, 1964, p. 4). The Court then proceeded to conclude that the "totality of the circumstances" demonstrated that the Commonwealth obtained the relator's permission by "trickery, coercion and duress".

The Superior Court reversed, holding that " * * * the search and seizure in Harris' apartment was not unreasonable because it was done with his permission, voluntarily given at a time when he was not under arrest". Commonwealth v. Harris, supra, at p. 148, 199 A.2d, at p. 292.

 Our review then, is limited to the question of whether the relator waived his constitutional right in a competent and intelligent manner to be free from an unreasonable search. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). See also Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1969); United States ex rel. Gockley v. Myers, 378 F.2d 398 (3rd Cir., 1967). After independently reviewing the evidence as collectively presented at the relator's suppression hearing, two trials, post conviction hearing and the Federal habeas hearing, we concur in the conclusion of the Superior Court. We cannot perceive of the presence of any "trickery, coercion or duress" on the part of the police. The consent expressed by the relator was manifested in a positive, unequivocal manner; he did not merely acquiesce in the desires of the investigating police. See Bumper v. North Carolina, supra.

At the suppression hearing the relator responded:

Q. From the conference [at Sun Oil Company] you voluntarily went to your apartment, is that correct, after the discussion with inspector Kelly?

A. [By relator] Yes sir, I did.

---

4. See also Suppression Hearing N.T. pp. 130–141; Second Trial N.T. pp. 758–778; 911–913.

5. See Second Trial N.T. pp. 1817–1837.

\* \* \* \* \* \*

Q. So then you had no objection to them searching your apartment?

A. No, sir \* \* \*.[6]

See Motion to suppress N.T. pp. 140–141. Based *inter alia* on the above, we cannot agree that the courts of the Commonwealth constitutionally erred in concluding that the consent manifested by the relator was the product of *other* than his complete volition. See e. g. Phelper v. Decker, 401 F.2d 232 (5th Cir. 1968) and Gorman v. United States, 380 F.2d 158 (1st Cir. 1967).

The facts surrounding the search of the relator's automobile are not unlike those present in the recent decision of the U. S. Court of Appeals for the Third Circuit in Government of the Virgin Islands v. Berne, 412 F.2d 1055 (May 12, 1969). The relator himself directed the police to a center-city garage where his auto was parked. He relinquished the parking receipt and affirmatively facilitated the search by personally opening the car door as well as the glove compartment.[7] Notwithstanding the fact that by this time the relator had been in custody for over five hours, his collective actions cannot reasonably be construed as anything other than the voluntary manifestation of assent.

HANDWRITING EXEMPLAR.

The relator was ultimately taken to police headquarters. Sometime between 11:00 P.M. and midnight he was given two lists of numbers and names (which corresponded to the stolen checks), and was told to copy them, thus providing the authorities with a specimen of his handwriting.

The opinion of the judge presiding at the suppression hearing apparently characterized this procedure as violative of the relator's 4th Amendment right

against unlawful search and seizure. The error, if any, should be considered under the 5th Amendment right against self-incrimination.[8] We again conclude, however, that this allegation is without merit.

First, there is no indication that the handwriting exemplar was obtained in an involuntary or coercive manner. He was merely told to copy the lists, which he did. See Suppression Hearing N.T. pp. 135–136; Second Trial N.T. pp. 919–933; 940–943; 1059–1065; 1858–1869.

However, even assuming *arguendo* that the relator was somehow forced to demonstrate his handwriting, we note that in Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court stated that the privilege against self-incrimination:

\* \* \* offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification \* \* \*.

See also United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Lewis v. United States, 127 U.S.App.D.C. 269, 382 F.2d 817 (1967) and specifically Wesley v. United States, 384 F.2d 100 (9th Cir. 1967); Weaver v. United States, 379 F.2d 799 (8th Cir. 1967); Granza v. United States, 381 F.2d 190 (5th Cir. 1967) and United States ex rel. Starner v. Russell, 260 F.Supp. 265 (M.D.Pa.1966), reversed on other grounds, 378 F.2d 808 (3rd Cir. 1967).

II.

As mentioned above, the Pennsylvania Superior Court ruled that the evidence obtained by the police as a result of a search of the relator's apartment and auto was admissible, as were the handwriting exemplars.

---

6. The relator even offered the police some coffee, while at the apartment. See Suppression Hearing, N.T. p. 140.

7. See Second Trial N.T. pp. 780–781; 916–917.

8. The *Virgin Islands* decision, supra, contains an excellent analysis of the scope of the 4th Amendment as contrasted with the 5th Amendment, in a factual setting not unlike the instant case.

Subsequently, at trial, the court would not entertain any further motions by defense counsel to suppress, holding that the ruling by the Superior Court was dispositive of the matter. However, the Court did charge the jury with the task of resolving the question of voluntariness.

■■ In passing upon the propriety of the Trial Judge's ruling, this Court is required to review the entire proceeding, and not just a specific step or portion thereof. Application of Stecker, 271 F. Supp. 406 (D.N.J.1966), affirmed, 381 F.2d 379 (3rd Cir. 1967). The entire proceeding would include consideration of the pre-trial motion to suppress and the appeal therefrom. Since this allegation of error is essentially asserted under the Due Process Clause, we can only observe that the relator was afforded the opportunity to fully litigate the matter. If anything, the relator's rights were scrupulously protected, since he had the advantage of pre-trial *appellate* review. The mere fact that the decision of the state appellate court was ultimately unfavorable does not alter the fact that a preliminary determination was made. This is all that due process requires. As previously noted, question of consent to the searches was also ultimately presented *de novo* to the jury.

■ Counsel have also alluded to Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) as authority for their stated position that the trial judge was *required* to preliminarily pass upon the admissibility of the aforementioned evidence. *Jackson*, however, specifically dealt with voluntariness of confessions—not with the propriety of searches. In any event, there was indeed compliance with the rationale of *Jackson* in the form of the pre-trial motion to suppress.[9]

### III.

Finally, the relator contends that the failure of the police to inform him that he could remain mute; that he was entitled to counsel; and that anything he said would be held against him, was error, alluding to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

■ Initially, we note that the Supreme Court has decreed that *Escobedo* and *Miranda* are to be applied only to cases where the trial commenced after the dates of the respective decisions. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).[10] In the instant case, the relator's second trial commenced on April 19, 1966. *Miranda* was decided on June 13, 1966. Thus, consideration will be limited to the application of *Escobedo*.

■ Briefly *Escobedo* held that where a police investigation has progressed from the general investigatory stage to the accusatorial stage, the accused must be afforded the opportunity to consult with counsel, and must be warned of his right to remain silent. Unless this is accomplished, no statement elicited by the police may be introduced against the accused at his trial.

However, there has been no assertion by the relator, or any indication from an examination by the various (and voluminous) transcripts that the relator ever *requested* the assistance of counsel in the instant case. Recently the U. S. Court of Appeals for the Third Circuit held that:

> * * * the rule of Escobedo can only be invoked by a defendant who has requested and been denied counsel.

Billingsley v. State of New Jersey, 3 Cir., 1969, 408 F.2d 1181.

---

9. Parenthetically, we note that *Jackson* has been construed to permit *post*-trial hearings on voluntariness of confessions. See e. g. Gladden v. Unsworth, 396 F.2d 373, 381 (9th Cir. 1968). *A fortiori*, a *pre*-trial hearing (such as the motion to suppress), certainly fulfills the requirement of Constitutional Due Process.

10. See also Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (June 2, 1969).

In addition, there was no confession or comparable statement elicited from the defendant at any time. But relator's counsel would ask this Court to characterize the handwriting exemplar as a "confession". See Motion for a New Trial N.T. p. 11–13. However, for reasons set forth in Part I of this Opinion, there is no basis in law for this characterization. Accordingly, this allegation of error is without merit.

### ORDER

AND NOW, this 17th day of June 1969, it is HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that the prior Order of this Court granting bail pending this decision shall remain in effect for thirty (30) days from the date of this Order. At the expiration of the thirty days, the relator shall be recommitted to the custody of the appropriate state authorities. If, however, an appeal of this Order is filed, then the relator may apply to the U. S. Court of Appeals for the Third Circuit for enlargement of bail.

It is so ordered.