**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald M. ZOURAS, Defendant-Appellant.**

**No. 73-1734.**

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1974.

Decided May 29, 1974.

---

Arthur E. Engelland, Robert S. Bailey, Chicago, Ill., for appellant.

James R. Thompson, U. S. Atty., Jeremy D. Margolis, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before CUMMINGS, PELL and STEVENS, Circuit Judges.

PER CURIAM.

Defendant was convicted by a jury upon both counts of a two-count indictment. Count One charged a violation of the Mann Act, 18 U.S.C. § 2421, and Count Two, the use of the mails in furtherance of extortion, in violation of 18 U.S.C. § 876.[1]

---

1. These statutes provide, in pertinent part: § 2421 "Whoever knowingly transports ·in interstate . . . commerce . . . any woman or girl for the purpose of prostitution . . ., or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; . . .

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

The evidence showed that Deborah De Witt, now Deborah Ludwell, worked as a prostitute for defendant, beginning in December, 1971. In February, 1972, she traveled by car to New Orleans for the Mardi Gras season with the defendant and another man, Fred Schwartz. While passing through Memphis on their return trip to Chicago, the defendant stopped the car to ask directions from a young girl, Deborah Wertz. A conversation ensued, defendant learned that she was sixteen years old, and earning money by working as a prostitute.

It was agreed that Wertz "was a member of our family now and . . . would be going back north with them." [2] They returned to Wertz's hotel room, where she collected her belongings. Schwartz said he would not drive north with "jail bait," [3] and was driven to the bus depot; the other three then returned to Chicago by car. [4]

Wertz and De Witt worked for defendant after arriving in Chicago. On May 2, De Witt quarrelled with the defendant, ended their relationship, and returned to her parents' home in Dolton. She provided the Vice Control Division of the Chicago Police Department with information concerning defendant's operation. Apparently as a result of this information, Wertz was arrested on May 9.

On May 22, De Witt's mother was visited by her sister and brother-in-law.

They gave her the envelope which is the subject of Count Two of the indictment. The envelope contained two photographs of Mrs. De Witt's daughter engaged in the commission of homosexual acts and a letter reading as follows:

"Mrs. De Witt's oldest daughter in action.

"These pictures and other ones like them are going to be sent to the neighbors; youngest daughter's graduation; and relatives.

"The De Witt family will be embarrest [sic] I would say.

"I think Dee should take a vacation for about a year or so. And not make any appearences [sic] against anyone in court or otherwise from this day on. Then the pictures will never be sent.

"Interested Party" [5]

The record indicates that the defendant had induced De Witt and another woman to engage in posed lesbian acts, and had taken the photographs. He represented that they were to be sold for $20 each. [6] The record also indicates that handwriting analysis, and fingerprint analysis connected the defendant with the letter. [7]

■■ Defendant offers three principal arguments for the reversal of his conviction. We cannot accept any of them, and therefore affirm the judgment of the district court. [8]

---

§ 876: "Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, or the reputation of a deceased person, or any threat to accuse the addressee, or any other person of a crime, shall be fined not more than $500 or imprisoned not more than two years, or both."

2. Testimony of De Witt. Tr. 90.

3. Tr. 92.

4. This fact was disputed vigorously at trial; the jury's verdict requires us, of course, to rely upon the evidence most favorable to the

Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

5. Indictment, p. 3.

6. Tr. 107–108.

7. Tr. 233–238; 254.

8. Defendant also offered a fourth argument. He suggests that it was error to allow the prosecutor to impeach his credibility by bringing his six prior felony convictions to the attention of the jury when he testified only on surrebuttal, and only to his own name. We think there is no merit in this argument. First, it is well-settled that the credibility of any witness is in issue when he testifies, and therefore, is subject to impeachment. There is no reason why this does not apply to a criminal defendant who

*First.* Defendant argues that the district court erred when it allowed the Government to impeach Deborah Wertz for her silence. The principal question of fact in the Mann Act count was whether Deborah Wertz returned to Chicago in defendant's car, as De Witt testified, or whether she came by bus, as she testified on cross-examination. Wertz was asked if she had refused to answer any questions posed by the FBI concerning her mode of transportation between Memphis and Chicago.[9] Defendant argues that she had a Fifth Amendment right to remain silent and, consequently, that her remaining silent could not be commented upon consistently with the Constitution.

■ The right to remain silent, guaranteed by the Fifth Amendment, is a privilege against self-incrimination, drawn from the language "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." It is not entirely clear whether Wertz's silence was a proper ex-

ercise of this privilege, because it is not clear whether the mode of transportation by which Wertz traveled from Memphis to Chicago was relevant to any of her own criminal activity.[10] Nevertheless, since the "privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant," Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, we are not prepared to hold that Wertz had no Fifth Amendment privilege in these circumstances.[11]

We reject defendant's argument because, assuming *arguendo* that Wertz's silence was a proper exercise of the privilege, defendant is not entitled to benefit from it. It is clear that evidence excluded by virtue of the privilege against self-incrimination, like evidence excluded by any privilege, is excluded not because the evidence is not relevant —by hypothesis it is—but because of in-

can elect not to testify. When he waives his right to remain silent, it must be because he has something to say which he wants the jury to believe. Second, there is no basis for making an exception here because, on direct examination, defendant testified only to his own name. The names by which defendant went were a question for the jury. Defendant admitted using three aliases, but denied the use of two others, Tr. 511. Since this denial was in direct conflict with Deborah De Witt's testimony, his credibility was unquestionably in issue, and impeachment proper.

9. "BY MR. NASH:
Q Directing your attention to February 19, 1972. This is the day, I believe, you testified you went out to the house on West 64th Place with your parents and the police officers?
A Which?
Q May 19, 1972?
A Yes.
Q Were you interviewed by an agent of the FBI concerning your trip from Memphis to Chicago?
A An agent talked to me.
Q And isn't it true that you refused to answer any questions?
MR. ENGELLAND: I am going to object, Judge.

THE COURT: Repeat the question.
BY MR. NASH:
Q Isn't it true that you refused to answer any questions concerning how you got from Memphis, Tennessee to Chicago, Illinois.
MR. ENGELLAND: I am going to object, Judge. It is a conversation outside of his presence and it calls for a conclusion.
THE COURT: You may answer the question.
BY THE WITNESS:
A I refused to answer any questions."
Tr. 382-383.

10. For purposes of federal law, Wertz was a "victim," not a "criminal suspect." Nevertheless she had been arrested by local authorities on May 9, and was possibly liable to prosecution under Article 11 of the Illinois Criminal Code, 38 Ill.Rev.Stat.

11. The Government suggests that since Wertz was not conscious of her Fifth Amendment privilege when she remained silent, the privilege cannot apply. We cannot agree. The knowledge might be relevant to the question whether she had waived her privilege, but the existence of the privilege itself cannot turn upon whether a person knows, or is informed by the police, that the privilege exists. Cf. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

dependent policy justifications. Since it is relevant, it should be excluded only when the policies justifying the privilege so require.

█ We think Wertz's silence was relevant. She testified that she traveled to Chicago from Memphis by bus; the fact that the prosecutor was able to elicit, on cross-examination, that she refused to tell FBI investigators any story—including the one to which she testified—reflects upon the credibility of that testimony. It was, therefore, useful to the jury. Since we do not understand the defendant to argue, and do not think he properly could argue, that, apart from his constitutional claim, he could make any proper objection to this testimony, we think the district court properly allowed it, unless the Fifth Amendment forbade it.[12]

█ Whether this relevant evidence should have been excluded turns upon the meaning of the constitutional privilege against self-incrimination. In Couch v. United States, 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548, the Supreme Court outlined the scope of the privilege in general as follows:

"It is important to reiterate that the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to [the] information that may incriminate him. As Mr. Justice Holmes put it: 'A party is privileged from producing the evidence but not from its production.' Johnson v. United States, 228 U.S. 457, 458 [33 S.Ct. 572, 57 L.Ed. 919 (1913)."

More relevant to the case before us, the court continued:

"The Constitution explicitly prohibits compelling an accused to bear witness 'against himself': it necessarily does not proscribe incriminating statements elicited from another."

The privilege then, is one against *self-*incrimination. It is designed to protect persons from testifying against themselves; its application in cases like Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, is to prevent juries from drawing adverse inferences from the fact that a defendant exercised his right to remain silent previously. Its protection only of the one who was entitled to exercise it, is well established:

"The right of a person under the Fifth Amendment to refuse to incriminate himself is purely a personal privilege of the witness. It was never intended to permit him to plead the fact that some third person might be incriminated by his testimony, even though he [was] the agent of such person." Hale v. Henkel, 201 U.S. 43, 69–70, 26 S.Ct. 370, 377, 50 L.Ed. 652.[13]

Since there was no in-court claim of the Fifth Amendment privilege by the witness, we hold that it was not error to allow the prosecutor to bring to the attention of the jury the fact that a witness had previously remained silent when, *arguendo,* she had a right to do so. The defendant had no stake in Wertz's Fifth Amendment rights. *Cf.* United States v. Castro, 438 F.2d 468, 470 (7th Cir. 1971).[14]

12. The parties discuss two Second Circuit cases, United States v. Tomaiolo, 249 F.2d 683 (1957), and United States v. Sing Kee, 250 F.2d 236 (1957), cert. denied, 355 U.S. 954, 78 S.Ct. 538, 2 L.Ed.2d 530. Although *Tomaiolo* can arguably be read as holding the evidence of silence was not relevant, we think both cases may properly be read to stand for the proposition that, where a witness had remained silent under the protection of the Fifth Amendment, the court must balance relevance against prejudice to the defendant. The *Sing Kee* court stated:

"We hold that . . . the relevance of [the witness'] grand jury claim of privilege outweighed the danger that the jury would draw from it any impermissible inference regarding [the defendant's] guilt. . . ." 250 F.2d at 239. Since no claim of prejudice is made here, the rule of those cases is not before us.

13. See also Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344.

14. This holding is consistent with the Supreme Court's analysis of Fourth Amend-

*Second.* Defendant argues that the conduct charged in Count Two of the indictment did not establish a violation of 18 U.S.C. § 876.[15] His position, principally, is that De Witt's testimony was not "a thing of value" within the meaning of the statute.[16] We believe that it was.

The statute prohibits extortion of "money or [any] other thing of value." This court has suggested that "any other thing of value" is to be given the broad reading its language implies. ". . . [W]e think it obvious that Congress intended . . . to penalize every extortion demand by mail which is coupled with an express threat . . . ." United States v. Prochaska, 222 F.2d 1, 2 (1955). Under such broad language, we have no difficulty in concluding that De Witt's testimony was a thing of value. The defendant's letter indicates that it was valuable to him; De Witt's testimony indicates that she valued the right to testify against him;[17] and the common law's ancient right of the court to everyman's evidence indicates its value to the people at large.[18] The mere fact that the value could not easily be translated into a monetary figure does not affect its character for purposes of § 876.

The indictment charged, and the evidence proved, a violation of that statute.

*Third.* Defendant argues that the two offenses were improperly joined under Rule 8(a), F.R.Crim.P. and, alternatively if they were not, the district court abused its discretion in not granting a severance pursuant to Rule 14, F.R. Crim.P.[19]

In United States v. Quinn, 365 F.2d 256, 263 (7th Cir. 1966), we set forth the requirements for a proper joinder under Rule 8(a), as follows:

". . . [J]oinder of two or more crimes in the same indictment is permissible only if one or more of the following three circumstances appear . . . : (1) the crimes must be the same or of similar character, (2) the crimes must be based on the same act or transaction, or (3) the crimes must be based on two or more transactions

---

ment rights which may not be asserted vicariously. See Alderman v. United States, 394 U.S. 165, 171–176, 89 S.Ct. 961, 22 L. Ed.2d 176.

15. The statute is set out in n. 1, *supra.*

16. In his brief, defendant questions why he was not indicted for violating statutes prohibiting obstruction of justice, 18 U.S.C. §§ 1503 and 1510. These statutes, he claims, were meant to cover the conduct which he was alleged to have committed. We need not decide whether that claim is correct, for we think the language of the Court of Appeals for the Second Circuit is a complete answer to his position: ". . . [T]he settled rule [is] that where criminal statutes overlap the government is entitled to choose among them provided it does not discriminate against any class of defendants." United States v. Ruggiero, 472 F.2d 599, 606 (1973) cert. denied, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398. If defendant extorted a "thing of value" under § 876, prosecution under that section was proper.

17. Tr. 114.

18. Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626. See also In re Subpoena to Nixon, 360 F.Supp. 1, 9–10 (D.D.C.1973).

19. Rule 8(a), F.R.Crim.P., provides:
"Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."
Rule 14, F.R.Crim.P., provides:
"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial."

connected together or constituting parts of a common scheme or design." In determining whether those criteria apply, the court should be guided by the extent of evidentiary overlap.[20]

In the case before us, we think the third *Quinn* criterion is satisfied. The acts charged in both counts constituted parts of one scheme by the defendant, namely, the operation of an illegal ring of prostitution on Chicago's near north side, knowledge of which defendant wanted to keep away from the police. Within that scheme, an even closer connection existed. De Witt was a principal witness in the Mann Act charge, she worked closely with Wertz, the Mann Act "victim," in the Chicago prostitution ring, and she could, and did before the letter was sent, provide the police with information which could, and apparently did, lead to the apprehension of the defendant. She provides the significant evidentiary overlap between the counts. De Witt's testimony, which described the transportation of Wertz from Memphis to Chicago, and the fact that, in Chicago, she worked as a prostitute for the defendant, was critical to the Mann Act charge. The same evidence was admissible on the Second Count to show to what it was that De Witt could testify which might have frightened the defendant into sending the extortionate letter. The joinder was proper.

We think, also, that the district court did not abuse its discretion in denying defendant's motion for severance,

pursuant to Rule 14. The principal grounds for claiming prejudice are the presence of the two photographs mailed in the letter which was the subject of Count Two. The pictures are explicit portrayals of lesbian activity. We do not doubt that there are circumstances in which they might be highly inflammatory. For two reasons, however, we do not think there was prejudice in this case.

First, the pictures are alleged to have tainted defendant's conviction under the Mann Act.[21] The facts surrounding that charge—a sixteen year old runaway girl, living by prostitution in Memphis and then coming to Chicago to participate in a fairly sophisticated prostitution business—necessarily made the jury more impervious to the photographs than they might have been in a case involving less sordid facts.

Second, the pictures showed De Witt engaging in the conduct which might have shocked the jury, notwithstanding the nature of the case. But she was the principal witness for the Government. We are not at all sure whether the pictures of her engaging in such conduct were more likely to inflame the jury against the defendant, or against her, the witness, upon whose veracity the Government's case turned. In a situation of such ambiguity, we cannot say that the district court abused its discretion under the standard applicable in this circuit.[22]

The judgment is

Affirmed.

---

20. See James v. United States, 416 F.2d 467, 474 (5th Cir. 1969).

21. They were part of the threat involved in Count Two, and hence admissible there.

22. See United States v. Blue, 440 F.2d 300, 302 (7th Cir. 1971).