THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD B. MOSS, Defendant-Appellant.

First District (2nd Division)   No. 76-1256

Opinion filed November 15, 1977.

James Geis and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Timothy Quinn, and Patricia Bender, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Richard B. Moss, was charged by indictment with the offense of murder in connection with the homicide of one Craig Saunders.

(Ill. Rev. Stat. 1971, ch. 38, par. 9—1.) Upon a jury trial defendant was found to be guilty as charged. Judgment was entered on the verdict and defendant was sentenced to serve a term of confinement in the Illinois State Penitentiary of 15-45 years.

From entry of the judgment of conviction defendant appeals contending (1) that the trial court abused its discretion in unduly extending the scope of cross-examination by the prosecution of certain defense witnesses; (2) that the trial court erred in permitting the State to present rebuttal testimony which had been previously offered in its case-in-chief; (3) that the prosecution's closing argument was improper and served to deny defendant a fair trial; and (4) that the trial court unduly restricted defendant's closing argument.

A review of the evidence establishes that in the late evening hours of Saturday, January 26, 1974, Craig Saunders died of gunshot wounds suffered during the course of a tavern brawl which erupted outside the Rusty Nail Pub located at 5800 West Belmont Avenue in Chicago, Illinois. Among those involved in the altercation were Saunders, Rick Avenna, James Crowe, William Paradise, Edward Passeri and defendant, Richard Moss.

At trial, the State adduced the testimony of Avenna, Paradise and Crowe in its case-in-chief. Each testified that he arrived at the tavern in the company of the deceased at approximately 10 p.m. and that the quartet drank beer, played games and mingled in the crowd. Shortly before midnight, a "verbal argument" ensued between the deceased and defendant which escalated to the suggestion that they "step outside." Avenna, Paradise, Crowe and Saunders left the tavern *en masse* along with defendant and his friend, Edward Passeri.

According to the State's witnesses, defendant and Passeri attacked Saunders immediately as he left the tavern and two separate fist-fights subsequently developed. Saunders and Passeri fought near an automobile parked on the street adjacent to the tavern. Paradise and defendant struggled in the nearby intersection. During the several minutes in which the fights occurred the entire vicinity was illuminated by streetlamps and light emanating from the tavern.

Avenna, Paradise and Crowe testified that they observed defendant run to a Buick automobile parked outside the tavern, stoop so as to reach under the front end of the vehicle and then stand up with his hand concealed inside his coat pocket. Avenna testified that defendant thereafter attempted to enter the vehicle from the passenger side without success. Defendant then drew a gun from his coat, ran to where Passeri and Saunders were fighting and, after ordering Passeri from the line of fire, defendant discharged the weapon twice into Saunders' body.

Saunders was struck in the head and chest by two .22-calibre bullets and subsequently died of his wounds.

As police arrived on the scene both defendant and Passeri fled. Passeri was captured a few blocks away and defendant was arrested at his home the next day. Examination of the Buick automobile established that it was owned by defendant. A box containing 19 .22-calibre bullets was recovered from the vehicle's rear seat.

Defendant adduced the testimony of Edward Passeri who stated that he had fired the shots which killed Craig Saunders. According to Passeri, he and defendant were ambushed as they left the tavern by Saunders and his party. During the course of the struggle, Saunders dazed Passeri by stabbing him in the head with a pair of scissors. Passeri observed a group of men attacking defendant and Saunders again accosted Passeri by threatening to kill him. Passeri then drew a weapon concealed in his boot, shot Saunders and fled with defendant.

On cross-examination and over defense objection, Passeri stated that prior to trial he had failed to inform the police, the prosecution or anyone outside his family or attorney that he had shot Saunders. Passeri admitted that he was aware that defendant had been charged with murder in connection with the shooting.

Defendant testified in his own behalf and denied possessing a weapon on the night in question or shooting Craig Saunders. Defendant explained that the initial altercation resulted when Saunders pushed him from a bar stool and that during the fight defendant attempted to flee but found his vehicle locked.

In rebuttal, the State adduced the testimony of Chicago Police Department Investigator Frank Radke who indicated that on January 27, 1974, he interviewed Edward Passeri and that Passeri denied all knowledge of the shooting. The State also was permitted to adduce the testimony of Avenna, Paradise and Crowe and each stated that defendant and not Passeri shot the deceased.

■■ Defendant primarily contends that in several instances the trial court erred in unduly extending the scope of the prosecution's cross-examination of certain defense witnesses. We note at the outset that the scope and extent of the cross-examination rests largely in the discretion of the trial court and only in the case of a clear abuse of discretion, resulting in manifest prejudice to the complaining party, will a reviewing court interfere with the trial court's ruling. *People v. Moretti* (1955), 6 Ill. 2d 494, 129 N.E.2d 709.

Within this context, defendant's initial contention is that pursuant to *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the prosecutor's use of Edward Passeri's post-arrest silence to impeach Passeri's testimony that he shot Craig Saunders constitutes a denial of

Passeri's and defendant's right to due process of law. In the instant case and over defense objection, the prosecution elicted from Passeri that during the 17 months in which he was aware that defendant was incarcerated, awaiting trial on a charge of murder in connection with the shooting of the deceased, Passeri failed to inform the prosecution or the police that he had fired the fatal shots.

■■ *Doyle* represents a case in which two defendants, Doyle and Wood, were advised of their right to remain silent in line with *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. At their trials, each defendant took the stand and gave an exculpatory story that had not previously been told to the prosecution or police. Over their counsel's objection, defendants were cross-examined as to why they had not given the arresting officer the exculpatory explanations. In reversing defendants' convictions, the United States Supreme Court held that the use for impeachment purposes of defendants' silence, at the time of their arrest and after they had received *Miranda* warnings, violated the due process clause of the Fourteenth Amendment. The rationale for the Court's decision was that silence following such warnings would be "insolubly ambiguous"; moreover, it would be fundamentally unfair to allow an arrestee's silence to be used to impeach an explanation subsequently given at trial after he had been impliedly assured, by the *Miranda* warnings, that his silence would carry no penalty.

However, the situation with which we are confronted (*i.e.*, cross-examination of a *defense witness* as to post-arrest, preliminary hearing and general pretrial silence), was expressly reserved for consideration by the Court. Indeed, the Court noted that such averments of error "present different considerations from those implicated by cross-examining petitioners as defendants as to their silence after receiving Miranda warnings at the time of arrest." 426 U.S. 610, 616 n. 6, 49 L. Ed. 2d 91, 96 n. 6, 96 S. Ct. 2240, 2244.

■■ It is clear that had Passeri been a party to the instant litigation he would be unable to assert in his behalf the matters currently assigned as error. The record fails to establish that Passeri was warned of his right to remain silent pursuant to *Miranda*. While defendant suggests that such warnings must be "presumed" to have been given as "standard practice," we deem such concerns to be singularly unsuited as matters for judicial notice. It cannot be maintained on appeal that Passeri's pretrial silence was in any way based upon a reliance on such warnings. Hence, the rationale of *Doyle* is inapplicable to the cross-examination of Passeri. The record does clearly establish that Passeri was expressly and repeatedly advised by the court and counsel of his right against self-incrimination before he testified at defendant's trial. Passeri's rights under the Fifth Amendment, therefore, were intelligently and knowingly waived. In all

respects, the cross-examination of Passeri regarding his pretrial silence constitutes a proper means of impeaching his testimony at trial.

Even if defendant's argument with respect to Passeri's constitutional privilege was persuasive, the opportunity to urge this theory must be denied for lack of standing. Defendant does not complain of violations of his own rights under *Doyle*, but only infringements of the privilege enjoyed by another. We hold the instant privilege to be personal and incapable of being vicariously asserted. See *United States v. Zouras* (7th Cir. 1974), 497 F.2d 1115.

■■ Next, defendant contends that the trial court improperly and with prejudice to defendant permitted the prosecution to adduce hearsay testimony as substantive evidence of defendant's guilt. Specifically, defendant complains of the cross-examination of Edward Passeri in which the prosecutor stated:

> "Mr. Passeri, you were present at the preliminary hearing and heard evidence that showed Richard Moss to be the shooter of Craig Saunders, weren't you? Were you not?"

An immediate defense objection to the question was sustained and the prosecution was admonished to "stay away from that area." The jury was also specifically instructed to disregard questions to which objections were sustained. Any possible error which might have attached to the prosecutor's statement was cured and, in light of the fact that the jury was properly apprised of the fact that defendant had been indicted in connection with the shooting of Craig Saunders; that Passeri was aware of the charge pending against defendant, and, that Passeri maintained silence regarding the identity of the shooter, the comment cannot be deemed to have improperly prejudiced defendant. *People v. Hampton* (1977), 46 Ill. App. 3d 455, 360 N.E.2d 1333.

Defendant also contends that the trial court erred in overruling defendant's objection to the prosecution's following inquiry of defendant:

> "Q. Mr. Moss, you and Edward Passeri had been friends for a long time, haven't you?
>
> Mr. Devanna: Objection.
>
> The Court: Objection overruled.
>
> The Witness: Yes.
>
> Mrs. Bobb: Q. You are friends today, aren't you, Mr. Moss?
>
> A. Yes.
>
> Q. And you would help him out if he needed that, wouldn't you, Mr. Moss?
>
> Mr. Liebowitz: Objection to that, your Honor.
>
> The Court: Objection overruled. You may inquire.
>
> Mrs. Bobb: Q. Did you hear my question?
>
> The Witness: A. Yes, I would.

Q. You would even testify for him, Mr. Moss?

A. I don't understand what you mean.

Q. You'd testify—You'd come into court and testify for Mr. Passeri if he needed you to do that, wouldn't you, Mr. Moss?

Mr. Liebowitz: Objection. No charges pending, your Honor.

The Court: Objection overruled.

Mrs. Bobb: Q. Would you answer my question, Mr. Moss?

The Witness: A. Could you repeat the question, please?

Q. Yes. You would come into court and testify for your friend, Edward Passeri, if he needed you to do that for him, wouldn't you, Mr. Moss?

A. You mean like he did for me.

Q. Yes, that is what I mean, Mr. Moss.

A. I don't know if I could bring myself to do that.

Q. Thank you very much. No further questions."

■■ The record reflects that defendant and Passeri had been friends for several years. They worked together, lived in the same neighborhood and socialized together. The prosecutor's line of questioning did not imply that defendant would commit perjury but only that defendant would testify under oath, presumably voluntarily, in a relevant situation. The question was neither confusing, embarrassing nor degrading and served to explore in an innocuous manner the depth of defendant's friendship for the witness. No error was committed in this regard.

Defendant asserts that the trial court erred in permitting the State to present rebuttal testimony which had previously been offered in its case-in-chief. During the State's case-in-chief, the three State's eyewitnesses, Rick Avenna, William Paradise and James Crowe, all testified that defendant shot the deceased. The defense witnesses, consisting of Edward Passeri and defendant, testified that Passeri shot the deceased. In rebuttal, the State called Avenna, Paradise and Crowe to reassert that they observed the shooting and that defendant pulled the trigger.

■■ The repetition in rebuttal of a portion of matters shown in the case-in-chief is permissible in the discretion of the trial court if the rebuttal evidence tends to explain, repel, contradict or disprove the defense. (*People v. Daugherty* (1969), 43 Ill. 2d 251, 253 N.E.2d 389; *People v. Hood* (1973), 11 Ill. App. 3d 329, 296 N.E.2d 393, *aff'd*, 59 Ill. 2d 315, 319 N.E.2d 802.) In the instant case, the complained of testimony was properly introduced to effect the purposes described in *Daugherty* and *Hood* and was not so extensive or duplicative as to warrant a contrary result.

Defendant finally contends that several of the trial court's rulings during closing argument were improper.

In support of his position defendant points to two extended comments

by the prosecution which defendant asserts served to deny him a fair trial.

■■ He complains, first, of the following comments by the prosecution:

"Ladies and gentlemen, I'm sure that after I have finished speaking to you, either Mr. Liebowitz or Mr. Devanna will argue, as is their right, on behalf of the defendant. In order to believe the defense in this case, ladies and gentlemen, you have to believe that William Paradise, that James Crowe, that Rickey Avena, the police officers who testified, and everyone who testified in the State's case, ladies and gentlemen, and by some allusion the State's Attorneys are somehow involved in a conspiracy and to put the incident—

Mr. Liebowitz: Objection.

The Court: Objection overruled. You may respond.

Mrs. Bobb: —are somehow involved in a conspiracy to put an innocent man away for a murder that he did not commit."

The aforementioned comments transcended the bounds of legitimate argument. *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256.

Defendant also complains of the following portion of the prosecutor's closing argument:

"Of course we have an obligation to talk to our witnesses before we put them on the stand to know what they are going to say. But I tell you this. The defense had an opportunity to talk to Ed Passeri. They knew what he was going to say, and I think it is arguable to draw this inference from the evidence they could tell him, Eddie, go ahead and say that. We know what the State's evidence shows. The State's evidence has always and has in this courtroom shown Richard Moss to be the shooter. Why not get up there and say I shot him self-defense. Do you think we could come back and prosecute him? Do you think we could come back and put him on trial for a crime? He could call all of our witnesses and testify under oath what a hero Eddie Passeri is. That is why I made a point where Eddie Passeri talked to the defense lawyers and the family of the defendant last week before he testified, or this Monday, or whenever it was."

■■ No objection was raised to the latter comments and, hence, defendant has failed to preserve the issue for review. However, the prosecution's insinuation that defense attorneys suborned perjury was not based upon evidence of record. *People v. Mwathery* (1968), 103 Ill. App. 2d 114, 243 N.E.2d 429.

■■ Finally, defendant contends that the trial court unduly restricted defendant's closing argument. Specifically, defense counsel attempted to argue that Edward Passeri had testified that he was "involved in the

element of the offense." While this argument was inartfully phrased, the trial court should have permitted defense counsel to stress that Passeri had placed himself under the finger of prosecution for his role in the death of Craig Saunders. Review of the record establishes that the jury was made well aware of this obvious fact.

■■ It remains to be considered whether the errors complained of warrant reversal of defendant's conviction. A review of the record in its entirety fails to establish that the jury's verdict would have been otherwise had the argument complained of remained unsaid. (*People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460.) The testimony of the three eyewitnesses adduced by the State remains substantially unimpeached. Such evidence, when coupled with the physical evidence recovered from defendant's automobile, serves to establish defendant's guilt beyond a reasonable doubt.

Accordingly, for the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING, P. J., and PUSATERI, J., concur.