UNITED STATES of America, Plaintiff–Appellee,

v.

Chris Warren NILSEN, Defendant–Appellant.

No. 90–5950.

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1992.

John R. Howes, P.A., Ft. Lauderdale, Fla., for defendant-appellant.

Michael J. Mullaney, Linda Collins Hertz, and Anne Ruth Schultz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT, Circuit Judge, JOHNSON *, and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Chris Nilsen appeals from a judgment of conviction and sentence from the United States District Court for the Southern District of Florida on three counts of mailing a threatening letter with intent to extort a thing of value in violation of 18 U.S.C. § 876. The primary issue is whether the

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

testimony of a government witness in a criminal investigation constitutes a "thing of value" within the meaning of § 876. We conclude that the statutory language of § 876 encompasses the extortion of intangible objectives such as the prevention of a witness from testifying in a criminal trial, and therefore affirm the judgment and sentence of the district court.

I.

In the early fall of 1986, Nilsen and a companion, Anita Ferullo, travelled from Ferullo's home in Fort Lauderdale, Florida to New York. On October 10, 1986, Nilsen dropped Ferullo off at a shopping mall on Long Island, New York. When he returned a few hours later, he told Ferullo that he had robbed a bank during his absence. Ferullo also noticed red stains on the interior of Nilsen's car, which later proved to have come from a red dye bomb attached to the stolen money bags. After Nilsen rejoined Ferullo, the couple used some of the stolen money to pay for lodging in a local hotel. Nilsen was arrested three days later by agents of the Federal Bureau of Investigation ("the FBI") and detectives of the Suffolk County, New York Police Department. He was charged under New York state law with the armed robbery of the Flushing Federal Savings Bank on October 10, 1986. Ferullo was also apprehended by the FBI on October 13, 1986. She immediately agreed to cooperate with their investigation of Nilsen, and several days later testified before a New York state grand jury in connection with both the October 10, 1986 bank robbery and another robbery committed by Nilsen in September 2, 1986. Ferullo was not charged in either of these crimes, and returned home to Fort Lauderdale after her appearance before the grand jury.

Following Ferullo's grand jury testimony, Nilsen was indicted on three counts bank robbery.[1] He was incarcerated at the Suffolk County Correctional Institute on

1. The indictment charged Nilsen with robbing three separate banks on September 2, 1986, September 19, 1986 and October 10, 1986.

Long Island, New York while awaiting trial. In January 1988, Ferullo received an envelope in the mail bearing a Long Island postmark. The envelope contained a letter and the front cover of a greeting card. The letter contained threats of physical violence against Ferullo if she accepted a subpoena to testify in New York against an unnamed person. The letter was signed, "A friend of a friend." The greeting card was captioned, "First Annual Reunion of the 'I was hit on the head by a falling safe and lived to tell about it' club." Ferullo received two other threatening letters in March and April 1988. Both letters were postmarked from Long Island, and each warned Ferullo against testifying in an upcoming trial in New York.

On May 19, 1988, at the request of the Suffolk County District Attorney, a Special Agent of the FBI served Ferullo with a subpoena to appear and testify in the state prosecution of Nilsen for armed robbery. At that time she turned over to the FBI agent the three threatening letters she had received earlier in the mail. She did not have to appear as a witness against Nilson because he pled guilty on July 20, 1988 to three counts of bank robbery.

On January 25, 1989, a federal grand jury in the United States District Court for the Southern District of Florida returned a three-count superseding indictment against Nilsen charging him with mailing a threatening communication with intent to extort a thing of value in violation of 18 U.S.C. § 876. Each count was directed to one of the three letters mailed to Ferullo from Long Island in January, March, and April of 1988. The "thing of value" referred to in each count of the indictment was Ferullo's testimony linking Nilsen to two of the robberies for which he was prosecuted in state court. The evidence at Nilsen's federal trial disclosed that the letters were typed on two models of typewriters owned by the Suffolk County prison library. Logs from the prison library established that Nilsen used the typewriters about the time that each of the threatening letters was mailed from Long Island. Additionally, the postmark on the envelopes contained the first three digits of the post office that processed the mail from the Suffolk County prison, and his fingerprints were detected on the April 13, 1988 letter. Nilsen was convicted on all three counts. The district court departed from the sentencing guideline range and imposed a sentence of 105 months to run consecutively to the state sentence received in the bank robbery convictions.

## II.

■ The relevant provision of § 876 under which Nilsen was prosecuted in federal court states that:

> "[w]hoever, with intent to extort from any person any money or other thing of value, so deposits, or causes to be delivered [by the Postal Service] any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

Nilsen contends that the government failed to prove an essential element of the crimes charged in the indictment because the term "thing of value" embraces only property rights, not an intangible such as the testimony of a witness. The government, on the other hand, argues that the broad language of the phrase "thing of value" encompasses intangible objectives as well as tangible property rights.

■ If a criminal statute is subject to two reasonable constructions, the harsher may be applied to penalize a defendant "only when Congress has spoken in clear and definite language." *McNally v. United States,* 483 U.S. 350, 359, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987). Thus, Nilsen's conviction can be affirmed only if the term "thing of value" unambiguously covers intangible considerations. As the Second Circuit Court of Appeals noted in *United States v. Girard,* 601 F.2d 69, 71 (1979), Congress' frequent use of "thing of value" in various criminal statutes has evolved the phrase into a term of art which the courts generally construe to envelope both tangibles and intangibles. This broad interpre-

tation is based upon a recognition that monetary worth is not the sole measure of value. *See United States v. Schwartz*, 785 F.2d 673, 679 (9th Cir.1986). The conduct and expectations of both the defendant and the subject of the extortionate threat also can establish whether an intangible objective is a "thing of value." *See United States v. Zouras*, 497 F.2d 1115, 1121 (7th Cir.1974). The testimony of a key government witness has previously been held to be a "thing of value" within the meaning of § 876 based upon the contents of a threatening letter from the defendant to the witness and the witness's testimony that she valued the right to testify against the defendant. *Id.* We therefore hold that the phrase "thing of value" is a clearly defined term that includes intangible objectives, and that the evidence was sufficient to establish that Nilsen mailed a threatening letter with intent to extort a thing of value from Ferullo—her testimony linking him to two of the state bank robbery charges pending against him.

■■ Nilsen's other two contentions concerning § 876 are also without merit. First, he maintains that, even if an intangible purpose can be characterized as a "thing of value," Ferullo never testified that she placed any value on the right to testify against him. However, Nilsen's letters to Ferullo make it apparent that her testimony was valuable to him. As we have stated, the conduct and expectations of a defendant can establish whether an intangible objective is a "thing of value." *See Zouras*, 497 F.2d at 1121. Therefore, it was not necessary for Ferullo herself to place value on her right to testify against Nilsen. Second, Nilsen claims that Ferullo's testimony was merely a contingency to which no value could be attached because it was not needed after he pled guilty to the bank robbery charges. Nilsen's subsequent actions, though, cannot vitiate the value that he placed upon her testimony at the time that he mailed the extortionate

threats. His criminal offense was completed when he mailed the threatening letters with intent to extort a thing of value. Therefore, it is immaterial whether Ferullo actually testified in court against Nilsen.

### III.

#### A.

■ Nilsen raises two other issues on appeal. First, he asserts that the district court abused its discretion by admitting into evidence his three bank robbery convictions. Nilsen made an oral motion in limine to exclude his prior convictions pursuant to Fed.R.Evid. 403,[2] urging that the evidence would serve only to prove his bad character.[3] He agreed to stipulate that he was the object of the grand jury proceeding at which Ferullo testified and so had an interest in its outcome. He contends that the government could thereby have proven that he mailed the extortionate letters to Ferullo without introducing evidence of the specific events which pertained to her testimony. However, the government also had to prove that what Nilsen attempted to exact was a "thing of value." To do so, it had to establish the content of Ferullo's testimony respecting his involvement in two of the charged offenses. Thus, Ferullo's testimony was an " 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.' " *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir.1989) (citation omitted in original). The evidence of the two bank robbery convictions of which Ferullo had direct knowledge was therefore inextricably intertwined with the charged offense of mailing a threatening communication with intent to extort a thing of value, and so was admissible even though it impacted negatively upon Nilsen's character. Accordingly, we conclude that the district court did not

---

**2.** Under Fed.R.Evid. 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."

**3.** Fed.R.Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

abuse its discretion in admitting evidence of Nilsen's prior bank robbery convictions.

■ Nilsen's third bank robbery conviction was not inextricably intertwined with the offense charged in the federal indictment because Ferullo's testimony did not relate to the third bank robbery. Consequently, she would not have been a witness in the prosecution of that offense. As a result, Nilsen's third bank robbery conviction could be said to be irrelevant and prejudicial to his defense in the federal prosecution of his § 876 offenses. However, " '[p]rejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury.' " *United States v. Anderson,* 782 F.2d 908, 916 (11th Cir.1986) (citation omitted). After reviewing the record, we are not convinced that a new trial is mandated in light of the other overwhelming evidence of Nilsen's guilt.[4]

### B.

■ Nilsen next complains that his sentence of 105 months imprisonment resulted from an incorrect application of the United States Sentencing Guidelines ("U.S.S.G."). He makes two arguments to sustain his position. Initially, he claims that the sentencing court erred in assigning a base offense level to his offense conduct pursuant to U.S.S.G. § 2B3.2 rather than U.S.S.G. § 2A6.1. Because § 2B3.2 assigns a base offense level of 18 and § 2A6.1 assigns a base offense level of 12, Nilsen contends that the sentencing court's alleged error increased his base offense

level by six. Both § 2B3.2 and § 2A6.1 list 18 U.S.C. § 876 as one of their statutory provisions. However, the guidelines characterize the offense conduct under § 2A6.1 as sending "Threatening Communications," whereas the offense conduct under § 2B3.2 is denominated as "Extortion by Force or Threat of Injury or Serious Damage." We agree with the sentencing court that the offense description contained in § 2B3.2 more fully encompasses the conduct charged in the indictment against Nilsen, and therefore conclude that the court utilized the appropriate base offense level.

Nilsen also argues that the sentence imposed by the court was an improper departure from the guidelines. In this case, the guidelines range for Nilsen was 63–78 months based on a total offense level of nineteen[5] and a criminal history category of six. The Presentence Investigation Report ("the PSI") recited that two of Nilsen's three bank robbery convictions were not scored for purposes of calculating his criminal history points because all three convictions had been consolidated as one for sentencing purposes. Each of the two uncounted convictions would have added three criminal history points if Nilsen had been given separate sentences for them. *See* U.S.S.G. § 4A1.1(a). The PSI concluded that:

> "If the Court were to take into consideration the … additional [six] criminal history points, the defendant would have a total of 25 criminal history points which could result in a criminal history category of higher than Category VI."[6]

The district court accepted the PSI's recommendation and sentenced Nilsen to 105

---

**4.** We also note that the district court instructed the prosecutor to clarify for the jury that Ferullo's testimony concerned only two bank robberies after a witness referred to the third bank robbery conviction.

**5.** The sentencing court added three units to the base offense level of 18 to adjust for Nilsen's conviction on three count. *See* U.S.S.G. § 3D1.4(a). After making a two level reduction from the combined adjusted offense level of 21 for Nilsen's acceptance of his criminal responsi-

bility, *see* U.S.S.G. § 3E1.1, the court determined that Nilsen had a total offense level of 19.

**6.** The PSI actually stated, "If the Court were to take into consideration the … additional nine criminal history points, the defendant would have a total of 25 criminal history points…." The reference to an additional *nine* criminal history points appears to be erroneous because Nilsen did receive three criminal history points for one of the robbery convictions. However, this point is not made in Nilsen's appeal.

months [7] after determining that:

"[Nilsen's] prior arrest criminal history qualifies [as] an egregious serious criminal record in which even a guideline range for a category six criminal history is not adequate to reflect the seriousness of [his] criminal history."

A review of the sentencing court's departure above Category VI necessitates a three-step analysis. First, it must be determined whether the departure is legally justified; second, whether the departure is factually justified; and finally, whether the departure is reasonable. *United States v. Weaver*, 920 F.2d 1570, 1573 (11th Cir.1991). With respect to the first step of the analysis, Nilsen claims that a departure from the guidelines is reserved only for cases involving the most compelling circumstances, such as "prior misconduct accompanied by wanton cruelty." [8] *See United States v. Coe*, 891 F.2d 405, 413 (2d Cir.1989). Pursuant to the guidelines, though, a prior sentence that was not used to calculate a defendant's criminal history category can justify a departure from the guidelines range. U.S.S.G. § 4A1.3(a), p.s. The guidelines also authorize a departure above Category VI where the guidelines range "does not adequately reflect the seriousness of the defendant's past criminal conduct...." U.S.S.G. § 4A1.3, p.s. The sentencing court's recitation makes clear that it departed from the guidelines range pursuant to § 4A1.3 based upon the fact that two of Nilsen's bank robbery convictions were not counted towards his criminal history points. We therefore conclude that the departure was legally justified.

Under the second step of the review, Nilsen does not allege that the sentencing court's factual findings regarding his criminal history are unsupported by the record or clearly erroneous. Instead, he contends that the sentencing court failed to articulate at the sentencing hearing the specific reasons for departing from the guidelines range in violation of 18 U.S.C. § 3553(c)(2). [9] An appellate court reviews the entire record from the sentencing hearing, including the sentencing court's reliance upon the PSI, to assess whether the district court complied with the requirement that it state with particularity the reasons for the upward departure. *United States v. Suarez*, 939 F.2d 929, 934 (11th Cir.1991). The sentencing court in this case specifically stated that it departed from the guidelines after reviewing the PSI. The PSI recited that two of Nilsen's bank robbery convictions had been consolidated for sentencing purposes, and so only one conviction had been counted in determining his criminal history points. Predicated on this report, the sentencing judge stated in open court that a Category VI criminal history did not adequately reflect the seriousness of Nilsen's criminal history. After reviewing the sentencing hearing transcript and the PSI, we conclude that the sentencing court complied with 18 U.S.C. § 3553(c)(2) by stating the specific

---

7. The PSI projected the following ranges for criminal history categories VII, VIII, IX, and X:

| | Criminal History Category | | | |
| --- | --- | --- | --- | --- |
| Offense Level | VII (16–18pts) | VIII (19–21pts) | IX (22–24pts) | X (25pts) |
| 19 | 70–87 mos | 77–96 mos | 84–105 mos | 92–115 mos |

The sentencing court initially sentenced Nilsen to 115 months, but reduced the sentence to 105 months after deducting two points from his criminal history score based on the court's rulings on certain objections by the defense.

8. Nilsen actually cites *Coe* for the proposition that the extent of the departure is unreasonable due to the lack of compelling circumstances in this case. Nilsen's reading of *Coe* is erroneous, for that case clearly states that only where compelling circumstances exist is a sentencing court permitted to make a departure above Category VI based on U.S.S.G. § 4A1.1. *Coe* does not support an argument that the absence of compelling circumstances renders a departure from the guidelines *unreasonable*.

9. Under 18 U.S.C. § 3553(c), "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

*    *    *    *    *    *

(2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described."

reasons for its departure from the applicable guidelines range.

Finally, the district court based Nilsen's term of imprisonment of 105 months on an extrapolated criminal history category of nine. He complains that the extent of the upward departure is unreasonable because the sentencing court failed to explain why Category IX was more appropriate than Categories VII or VIII. In evaluating whether the extent of a departure is unreasonable, a reviewing court must look to the statutory factors to be considered in imposing a sentence and the reasons for the defendant's particular sentence as stated by the sentencing court. 18 U.S.C. §§ 3742(e)(3)(A); 3742(d)(3)(B). As mandated by 18 U.S.C. § 3553(a)(1), one of the factors that the sentencing court must consider is the defendant's history. As previously pointed out, the departure in this case was predicated on Nilsen's history of two prior bank robbery convictions that were not counted for purposes of calculating his criminal history points. The sentencing court increased Nilsen's criminal history points to a total of 23 by adding three criminal history points for each of his uncounted bank robbery convictions. This score placed Nilsen in a specific extrapolated criminal history category of nine. As a result, it was unnecessary for the court to explain why it was not utilizing the ranges for extrapolated categories VII and VIII. Also, the sentence imposed of 105 months is well within the statutory range of twenty years (240 months). *See* 18 U.S.C. § 876; *United States v. Dempsey*, 957 F.2d 831, 833 (11th Cir.1992). Based on these considerations, we cannot say that the extent of the upward departure is unreasonable.

## IV.

For the foregoing reasons, the judgment and sentence of the district court is AFFIRMED.