People of the State of Illinois, Defendant in Error-Appellee, v. Gerald George Tomaszek, Plaintiff in Error-Appellant.

Gen. No. 49,449.

First District, First Division.

December 7, 1964.

Rehearing denied December 30, 1964.

Frank G. Whalen, of Chicago, for appellant.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and George W. Kenney, Assistant Attorneys General, Elmer C. Kissane and L. Michael Getty, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

On December 2, 1963, after a jury trial in which Gerald George Tomaszek was found guilty of the offense of theft, he was sentenced to the penitentiary for a term of from four to five years. After pronouncing sentence on the theft charge, the trial court then revoked probation granted defendant in 1960 on a charge of attempted burglary and on that charge sentenced defendant from four to five years, both sentences to run concurrently. Defendant appeals from the theft conviction and from the revocation of his probation on the attempted burglary charge.

As to the theft conviction, defendant contends error because (1) the jury verdict did not contain a finding of the value of the property stolen; (2) there was a fatal variance between the indictment and proof as to the ownership of the property stolen; and (3) prejudicial conduct by the State's Attorney, which violated defendant's constitutional privilege against self-incrimination, when the State's Attorney placed eyeglasses, in evidence, on defendant during cross-examination. As to the probation revocation, defendant

contends error because the order was not entered by the judge who granted the probation and because of the summary nature of the hearing.

In September, 1962, defendant was indicted for the offense of theft of property "of the value of more than one hundred fifty dollars, the property of Donald S. Kanak, intending to deprive said Donald S. Kanak permanently of the use and benefit of said property." The jury verdict found the defendant "guilty in manner and form as charged in the indictment."

The record shows that on September 12, 1962, Donald Kanak, while making a sales call, parked his company's 1962 Cadillac near his customer's store. In the trunk were a typewriter, a dictating machine, and two adding machines. When he returned, the car was gone, and he immediately reported the theft to the police.

Within an hour, police officer, John Hinchy, driving an unmarked police automobile, observed defendant, whom he had known for three years, driving a 1955 Oldsmobile, with another man in the car, sitting to his right. Defendant looked in Officer Hinchy's direction, put the car in reverse, and at a high rate of speed made a "U" turn over a median strip. The officer also made a "U" turn, put on his headlights and spotlight, and pursued the Oldsmobile through a red light at a speed of 65 to 70 miles an hour. The Oldsmobile attempted to make a turn, skidded and came to a stop, with the police automobile stopping behind it. Officer Hinchy approached on foot, and from the rear of the car shouted he was a police officer, to get out of the car, and that they were under arrest. Defendant started the car in reverse motion, toward the officer, who jumped aside and fired several shots at the right rear tire, deflating it. The car pulled away at a high rate of speed, with Officer Hinchy pursuing it, until he lost sight of the car.

257

As the officer continued looking for the Oldsmobile, some man waved in the direction of a school, which the officer entered, found defendant and took him into custody. On searching defendant, the officer found two sets of keys. A short time later, he found the 1955 Oldsmobile in a nearby alley, and in it was a typewriter and adding machine. With the keys taken from the defendant, which fitted the trunk and the ignition of the car, he opened the trunk and found several office machines, a tire and wheel, and a briefcase.

Donald Kanak testified that he was employed by Kanak & Sons, Inc., sold office machines, and was its treasurer. On September 12, 1962, he placed items of office equipment in a 1962 Cadillac, which the corporation owned and for which it paid $5,200. While he was making a sales call, the car was stolen. That afternoon, at "5th Area, Burglary," he identified a typewriter, two adding machines, a dictating machine, a briefcase, and a tire, as articles that were in his care, custody and control from the time he left Kanak & Sons until the Cadillac was stolen. The items were then returned to him. He identified the articles by means of a police photograph in evidence. He testified that the value of the typewriter was $279; the value of the dictating machine was $250; the value of the two adding machines was $350 and $335. He stated that all of the items were the property of Kanak & Sons with the exception of the typewriter.

Two other police officers testified that, in another squad car, they joined Officer Hinchy in pursuit of the Oldsmobile. One of them identified defendant as the driver and as the man who, while fleeing from the Oldsmobile, dropped a valise in which was found a pair of eyeglasses. At that time, defendant was not wearing glasses.

Officer Hinchy testified defendant was wearing eyeglasses when he first saw him in the Oldsmobile,

but that defendant was not wearing glasses when arrested. Another police officer testified that at "Area 5" headquarters, he questioned defendant about a pair of eyeglasses found in the valise dropped by defendant. He asked defendant, "Are these your glasses?" and defendant said they were. He further said, "You need them, don't you?" and defendant said, "Yes, I do." Defendant then put on the glasses for a few minutes. The officer then returned the glasses "to inventory." On cross-examination, this officer testified that the glasses were "prescription glasses," and after an investigation, he was unable to identify the glasses "as belonging to or prescribed for the defendant." Over objection, the eyeglasses were received in evidence as People's Exhibit 5.

Defendant testified in his own behalf. On the day in question, he had worked from eight o'clock in the morning until noon. While looking for an apartment, he heard a lot of shouting and turned around to see a man, dressed in civilian clothes, with a gun in his hand. Defendant started to run down the street, and as the man started to fire the gun, defendant ran into the school. "I had seen Sergeant Hinchy on two or three occasions before this time. I saw him in a tavern where I go once in a while . . . . I was walking out of the door of the Seneca High School when Sergeant Hinchy was walking in. He grabbed me, put a gun on me, threw me against the wall, searched me and took my house keys. Exhibits 7 and 7a are the keys for my mother's house that Sergeant Hinchy took from me. The other set of keys that are on a separate chain were not taken from me. I saw Mr. Hinchy in the Seneca High School but I had not seen him before that day."

Defendant denied any knowledge or control of the 1962 Cadillac or of any of the articles identified as being stolen. He denied operating a 1955 Oldsmobile

or any other car on September 12. When arrested, he was wearing "prescription sun glasses." He denied ownership of the eyeglasses previously identified as People's Exhibit 5, or that he had told any police officer that he needed them or owned them. On cross-examination, and at the request of the State's Attorney, and over objection, defendant put on the glasses (People's Exhibit 5) and was questioned as to their type and his ability to use them.

Initially, we consider defendant's contention that the verdict is void because it failed "to contain a finding that the value of the articles exceeded $150." Defendant cites the penalty provision of the criminal Code of 1961 (Ill Rev Stats, c 38, § 16–1, effective January 1, 1962), which provides:

> ". . . A person convicted of theft of property from the person or exceeding $150 in value shall be imprisoned in the penitentiary from one to 10 years."

He also cites cases which hold in substance that "a general verdict of guilty is not enough where the place of imprisonment depends upon the value of the property involved." People v. Jackson, 312 Ill 611, 612, 144 NE 314 (1924), and People v. Swinson, 406 Ill 233, 92 NE2d 758 (1950), where the court stated (p 237):

> "The value of the property taken is a material fact necessary to establish the type of larceny charged; that value must be specifically found by the jury and be incorporated in its verdict."

See, also, People v. Smithka, 356 Ill 624, 627, 191 NE 211 (1934).

The State contends that the verdict is valid because there was no evidence to warrant an instruction for a verdict for a lesser offense, and if defend-

ant desired that a formal verdict for a lesser offense be given, it was his duty to prepare and ask for such instruction to the jury, and having failed to avail himself of that right, he is in no position to complain. People v. Green, 27 Ill2d 39, 44, 187 NE2d 708 (1963).

█ We hold that no error was committed in submitting a general verdict to the jury in this case. There was no issue raised as to the value of the property stolen, and as the evidence affirmatively established the property value to be well in excess of $150, a finding by the jury as to its value was unnecessary. In fact, "where there is no conflict in the evidence as to the value and it is clearly in excess of $50, there is no error in refusing instructions on petty larceny." (People v. Rogers, 16 Ill2d 175, 182, 157 NE2d 28 (1959).) There being no question of fact as to value, the jury's function was discharged when it found defendant "guilty in manner and form as charged in the indictment."

Defendant next contends that there was a fatal variance between the proof and the charges in the indictment. He argues, "The proof showed the articles were not owned by Donald S. Kanak but were owned by Kanak & Sons, Incorporated, except the Royal typewriter which was the property of the Royal Typewriter Company. The articles themselves were not introduced into evidence but pictures of the articles were introduced into evidence over the objection of the defendant." Cited are Aldrich v. The People, 225 Ill 610, 80 NE 320 (1907), and People v. Quinn, 411 Ill 97, 103 NE2d 81 (1952).

The 1961 Criminal Code includes a definition of "owner," which we believe is determinative of the question of ownership in this case. Section 15–2 states:

". . . 'owner' means a person, other than the offender, who has possession of or any other in-

terest in the property involved, even though such interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property."

■ As Donald Kanak, the complainant, had possession of the stolen property as salesman for the legal owners, we find this possession was sufficient proof of ownership here, as against one who has stolen the property. See, also, People v. Hansen, 28 Ill2d 322, 339, 192 NE2d 359 (1963). We find no variance in proof as to ownership.

Defendant next contends that "the forcible placing of eyeglasses on the defendant by the State during cross-examination of the defendant violated defendant's guaranty against compulsory self-incrimination in violation of the Fifth Amendment of the Federal Constitution and constituted prejudicial conduct and deprived defendant of a fair trial." Cited is Allen v. State of Maryland, 183 Md 603, 39 A2d 820, where it was held to be improper to compel a defendant to try on a hat during cross-examination.

■ Compelling a defendant, on cross-examination, to exhibit himself or perform some action, if material to an issue in the case, is not testimonial compulsion. In People v. Munziato, 24 Ill2d 432, 436, 182 NE2d 199 (1962), our Supreme Court, in discussing illustrations of "compelled conduct to which the privilege does not extend," cited 8 Wigmore on Evidence, 3rd Ed, § 2265, where it is said:

> "Unless some attempt is made to secure a communication—written, oral or otherwise—upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one."

■ The privilege against self-incrimination extends only to testimonial compulsion and "not an exclusion of his body as evidence when it may be material." (Holt v. United States, 218 US 245, 252–3 (1910).) See also, McCormick on Evidence, § 126, p 263; Rochin v. California, 342 US 165, 179, 96 L Ed 183, 72 S Ct 205 (1952); People v. Curran, 286 Ill 302, 310, 121 NE 637 (1919), 171 ALR 1144 (1948).

■ ■ On cross-examination, the request to the defendant to put on eyeglasses, in evidence, was not testimonial compulsion, and, therefore, was not within the scope of the privilege against self-incrimination. Nor do we find it to be prejudicial conduct such as to deprive defendant of a fair trial. The glasses were in evidence, the defendant had denied they were his, and the ownership of the glasses was relevant and a material issue in the case. We find no error here.

As to the revocation of his probation, defendant argues that "the interest of justice and orderly procedure would seem to indicate that Judge William V. Daly who granted the probation should be the judge who would revoke the probation and fix the sentence. . . . and there was no showing as to why the matter could not be assigned to him for immediate hearing." Defendant also complains that the hearing on the revocation was conducted in a summary fashion, and that a harsh sentence was imposed.

The record shows that on September 19, 1962, a warrant was issued for the arrest of the defendant for the violation of his probation, and on January 10, 1963, a rule was entered against defendant to show why his probation should not be terminated. There were a number of continuances, and on the date of the revocation order, December 2, 1963, the court said: "There is no question under the evidence that was produced in court, he has flagrantly violated his pro-

bation. . . . This violation of probation should have been taken care of a long, long time ago."

The revocation procedure followed was substantially in accord with the provisions of paragraph 789.1, entitled "Procedure upon alleged violation of probation," and as the sentence was concurrent with that given for the offense which caused the revocation, we fail to see that a "harsh sentence" was imposed.

Neither do we consider it improper for probation to be revoked by a judge other than the judge who entered the probation order in a situation similar to the instant one. Paragraph 786 provides that "a cause continued pursuant to the provisions of this Act shall be deemed subject to the jurisdiction of the court in which it is pending, *or any judge thereof,* for the full period of its continuance, during which time orders may be entered with respect to the conditions of probation, or final sentence imposed without the formal setting aside of such order of continuance." (Emphasis supplied.) We find no error in the revocation of defendant's 1960 grant of probation.

For the reasons given, both judgments and sentences appealed from are affirmed.

Affirmed.

BURMAN and KLUCZYNSKI, JJ., concur.