THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LUIS PEREZ, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MANUEL SANTIAGO, Defendant-Appellant.

Fourth District    No. 16197, 16198 cons.

Opinion filed July 14, 1981.

Daniel D. Yuhas and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellants.

C. David Vogel, State's Attorney, of Pontiac (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Perez and Santiago were convicted of committing mob action and battery while they were inmates of the Pontiac Correctional Center.

We affirm.

On appeal, they assert that the trial court erred in failing to poll the jury to determine what effect, if any, certain news accounts had upon them; that the court erred in denying their motion *in limine* requesting that they not be cross-examined as to their prior criminal convictions; that the court improperly allowed cross-examination beyond the scope of direct examination; and that the trial judge improperly imposed concurrent sentences for battery and mob action since both offenses were carved from the same physical act.

I

On January 8, 1980, a panel of jurors and two alternates were sworn to try the issues in this case. On January 22, 1980, the date trial commenced, defendants filed a motion for mistrial based on prejudicial publicity arising from an incident that had occurred the day before. A motion for mistrial with accompanying affidavits outlined the fact that on January 21, 1980, two Pontiac correctional officers were seriously injured outside the Livingston County Courthouse by two handcuffed and shackled prisoners whom they were taking to court. In arguing the motion, counsel for defendant Santiago argued that the total effect of the incident and the coverage in the media was to cause an atmosphere of tension in the community, in the courtroom, and in the courthouse, resulting in prejudice against the defendants such that there was no chance that they could receive a fair trial. Both defense attorneys urged the trial court to make an inquiry of each juror to determine whether any juror was exposed to the news accounts and what effect, if any, the publicity may have had on the jury's ability to give the defendants a fair trial.

The news accounts attached to defendants' motion covered both the stabbing incident and the instant case. As to the accounts of the instant case, the trial court noted that the jury had been specifically admonished not to receive any information from any source in regard to this case, and the court was not prepared to presume a violation by the jury of their obligation. As to the other media coverage, the trial court stated that even assuming some awareness on the part of the jury, there was an insufficient relationship between the incidents to cause any presumption of prejudice to the defendants. Specifically, the trial court noted that there was a 1½-year time span between the offenses; the stabbing incident did not involve the defendants in the instant case and did not occur in the same community. (The trial in the case before us was in McLean County.)

Defendants now argue that the trial court committed reversible error

when it failed to conduct an examination of the jurors to determine what effect the news accounts would have upon them and when it failed to give an instruction to the jury to disregard those accounts.

■■ It is inherent in a defendant's right to a fair trial that he receive a trial by an impartial jury free from outside influence. A verdict must be based upon the evidence received in open court and not from outside sources. (*Sheppard v. Maxwell* (1966), 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507.) It is also clear that when a trial court becomes aware that jurors have been exposed to news articles, the court must make a meaningful examination of the jurors to determine any prejudice. *People v. Cain* (1967), 36 Ill. 2d 589, 224 N.E.2d 786.

■■■ When an allegation of prejudicial publicity is raised, the trial court is required to make a two-part analysis. Step one is a consideration of the nature of the publicity, its contents, and its potential for prejudice. (*People v. Cox* (1966), 74 Ill. App. 2d 342, 220 N.E.2d 7.) If the trial court determines the publicity is not prejudicial, there is no need to poll the jury. (*People v. Hurley* (1973), 10 Ill. App. 3d 74, 293 N.E.2d 341.) Furthermore, articles referring to a general class of offenders, but not the defendant specifically, are not necessarily prejudicial to a defendant. *People v. Cordova* (1980), 83 Ill. App. 3d 147, 403 N.E.2d 788; *People v. Krueger* (1968), 99 Ill. App. 2d 431, 241 N.E.2d 707.

In *Cordova*, the defendant was convicted of aggravated battery relating to a stabbing at the Stateville Correctional Center. Evidence was produced that the defendant was a member of the Latin Kings, a street gang. During trial, the Chicago Sun-Times newspaper published an article concerning Chicago street gangs and purportedly indicated that the Latin Kings were one of the most vicious gangs, its members having been convicted of a number of serious crimes. After ascertaining that the article did not refer to activity within the penitentiary, the trial court found no prejudice. The appellate court affirmed, stating that the trial court did not abuse its discretion and noted that articles referring to a general class of offenders, but not specifically to the defendant, are not necessarily prejudicial to the defendant.

■■ The articles here in question contained no potentially prejudicial material to the defendants because of the general nature of the comments. The accounts of the stabbing incident occurred at a different time and place and by different perpetrators from those in the instant case. The only connection between the perpetrators of the stabbing incident and the defendants in this appeal was that the accused in both instances were Pontiac prisoners. This fact, in and of itself, was not sufficient to warrant the action requested by the defendants below. Furthermore, as the State correctly notes, it was affirmatively shown in this case that the jurors had heeded the court's constant instructions and admonitions given both at the

time of jury selection and throughout the trial. The court, prior to final arguments, interrogated the jury as to their exposure to any external influences, whether through the media or otherwise, and the jurors denied such exposure.

## II

Prior to trial, defendants filed a motion *in limine* to bar the use of their prior convictions for purposes of impeachment. The motion alleged that the prejudicial effect of this evidence outweighed its probative value. Following a hearing, the trial court denied the motion.

After the State closed its case and prior to presentation of the defendants' cases, defense counsel informed the trial court that they wished to have defendants' tattoos displayed to the jury. Defense counsel initially stated that there would be no verbal testimony and requested that the cross-examination by the State be limited to the scope of direct, that being the tattoos. The trial court stated it saw no problem with that and that as to any direct testimony, the scope of cross-examination would be so limited. The prosecutor persisted in objecting, however, to the display on grounds of relevancy. The trial court overruled this objection. The State then argued that the display constituted nonverbal testimony, for which the State should have the ability to impeach by proof of prior convictions. The court agreed with this position.

During defendants' case, defendant Perez, under direct examination by defense counsel, stated that he had been convicted of armed robbery, bond jumping, unlawful use of weapons, and possession of marijuana. Defendant Santiago did not testify.

Defendants first argue that the trial court erred when it ruled that the display of tattoos would be testimonial in nature and as such the prosecution could introduce the evidence of prior convictions to impeach credibility. Defendants argue that it has long been held that requesting a defendant to exhibit himself or perform some action before the jury is not testimonial in nature. *Holt v. United States* (1910), 218 U.S. 245, 54 L. Ed. 1021, 31 S. Ct. 2; *People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254; *People v. Tomaszek* (1964), 54 Ill. App. 2d 254, 204 N.E.2d 30, *cert. denied* (1965), 382 U.S. 827, 15 L. Ed. 2d 72, 86 S. Ct. 62.

■■ We need not address the unique question presented by the defendants, for, as the State correctly argues, defendant Perez did in fact testify. The record indicates that under direct examination by defense counsel, defendant Perez stepped down from the stand, disrobed his upper body, and displayed his tattoos to the jury. Under questioning by counsel, he stated that he had other tattoos and displayed his chest to the jury. He further stated that he had an indecent tattoo on his left knee. One of the

issues in the case was whether defendant had an "LK" tattoo of the Latin Kings anywhere on his body. While the defendant displayed the upper portion of his body, testimony was received only as to the tattoo on his left knee. As such, Perez placed his credibility in issue and made impeachment proper. Since Perez made statements on direct examination which involved a question of credibility, the State was allowed to impeach him. See *United States v. Zouras* (7th Cir. 1974), 497 F.2d 1115.

Defendants further argue that the trial court erred in denying their motions *in limine* concerning their prior convictions because the probative value of such evidence was far outweighed by the likely prejudicial effect.

■■ Evidence of a defendant's past crimes cannot be used to prove his propensity to commit the offense charged. (*People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058.) But an exception to this rule is impeachment, where the defendant takes the stand in his own behalf, and where the prior conviction was for a felony or for an offense involving dishonesty. In such a case, the trial court has the discretion to permit the introduction of the evidence where the probative value outweighs the prejudicial effect. *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

After noting that both defendants were charged with offenses that involved acts of violence and that their prior convictions also involved violent conduct, the defendants assert that there was nothing of substantial probative value to warrant the introduction of the evidence, especially where the jury knew that the defendants were inmates.

■■ The factors for the trial judge to consider in weighing the probative value against the prejudicial effect are the nature of the crime, the nearness or remoteness in time of the conviction to the present trial, the subsequent career of the person, and whether the crime was similar to the one charged. (*Montgomery; People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563.) Considering these factors as a whole, the trial court could have properly concluded that the probative value of the prior convictions was not substantially outweighed by the prejudicial effect. In particular, the convictions of armed robbery and violation of bail bond had a high probative value since they related to dishonesty.

■■ As to defendant Santiago, there remains another reason for rejecting this argument. The burden in cases such as the instant one is on the defendant to demonstrate prejudice. The defendant's refusal to testify standing alone will not serve as a basis for concluding that he was prejudiced. Defendant's decision not to testify can be viewed merely as a matter of trial strategy. *People v. Leonard* (1980), 83 Ill. 2d 411, 415 N.E.2d 358; *People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072.

## III

Defendant Perez further argues that the trial court committed reversible error by permitting the prosecution to conduct a cross-examination that unduly exceeded the scope of direct examination. It is argued that this questioning unfairly prejudiced both defendants.

Following defendant Perez' testimony concerning his tattoos and his prior convictions, the prosecutor proceeded to cross-examine defendant Perez. Aside from asking defendant about the tattoos, the prosecutor questioned defendant concerning whether certain prosecution witnesses who were also inmates at the Pontiac Correctional Center were present in the chapel during the time that defendants allegedly committed the offenses. Defendant Perez responded that he could not recall seeing any of the witnesses in the chapel.

■■ It is axiomatic that the scope of cross-examination is largely within the discretion of the trial court. (*People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) The general rule is that cross-examination is limited to matters covered on direct examination. This general rule is modified, however, to the extent that cross-examination may develop all of the circumstances that are within the knowledge of the witness which explain, qualify, discredit or destroy his direct testimony, although they may incidentally constitute new matter which aids the party conducting the cross-examination.

■■ Since the display of defendant's tattoos was for the purpose of showing the identifying marks on defendant's body, it was permissible for the State to inquire whether defendant's upper body was covered by whatever type of clothing he wore on the date of the incident and as to the proximity of the State's witnesses to the defendant on that date in order to offset any potential argument by the defendant that the State's witnesses' identification of the defendant was suspect for failure to see many of the tattoos on his body. Since the most contested issue in this case was the defendant's identity as an assailant, it was certainly within the trial court's discretion to allow the State to explore the ability of the witnesses to see certain identifying marks on defendant's body which defendant on direct implicitly demonstrated were prominent features of his person.

Finally, as the State correctly notes, any potential prejudice from the cross-examination must be miniscule. The record indicates that all of the 800 to 1,000 inmates from the south cellhouse attended the movie shown in the chapel, and thus defendant Perez' admission of being in the chapel on that date at some unspecified time, and his stated inability to recall seeing any of the State's witnesses near him in the chapel on that date, did nothing to discredit the defense theory of mistaken identity. Even if the jurors ignored the instruction to give separate consideration to each defendant, defendant Santiago was not harmed, since defendant Perez

admitted to being in the chapel but said nothing as to defendant Santiago's presence in the chapel on that day.

### IV

■■ Defendants were found guilty and sentenced for the offenses of battery and mob action. Defendants argue here that both the battery and mob action offenses were carved from the same physical act and thus they were impermissibly convicted and sentenced for both. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Defendants argue that the judgment of conviction and sentence on the less serious of the offenses— battery—should be vacated and the State has confessed error on this point. Thus, defendants' battery convictions will be vacated.

Defendants' convictions for the offenses of mob action are hereby affirmed; the convictions and sentences for the offense of battery are hereby vacated.

Affirmed in part; vacated in part.

TRAPP, P. J., and GREEN, J., concur.