THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL ZAMBETTA, Defendant-Appellant.

Second District   No. 83—468

Opinion filed April 29, 1985.

George P. Lynch, of Chicago, and Philip F. Locke, of Locke, Tellefsen & Learn, of Glen Ellyn, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STROUSE delivered the opinion of the court:

The defendant, Michael Zambetta, was convicted of unlawful delivery of a controlled substance, cocaine, in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)), possession of a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(b)), and armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A–2) after a jury trial in Du Page County. After denying the defendant's motion for judgment of acquittal and renewed motion for mistrial, the trial court sentenced the defendant to prison terms of three, six, and eight years to run concurrently, and fined him $5,000 plus court costs. He appeals raising five assignments of error: (1) whether the trial court properly denied defendant's motion for severance, (2) whether the trial court properly denied defendant's motion to identify or produce the informant, (3) whether the defendant was properly required to elect a defense prior to trial, (4) whether the State proved the defendant's guilt beyond a reasonable doubt, and (5) whether the trial court erred in denying the defendant's motion for a mistrial after an allegedly prejudicial newspaper article was read by jurors during the trial.

On the evening of November 3, 1980, Agent Wayne Fieroh traveled to the home of Donald Svendson, 401 Spring Hill Road, Roselle, for the purpose of purchasing cocaine. He was accompanied by Jason "Slick," a government informant. Upon Fieroh's arrival, Svendson approached their car and indicated to Fieroh the cocaine had not arrived. Shortly thereafter, a vehicle driven by Antonio Mannarino pulled into the driveway behind Fieroh's car. Mannarino advised Fieroh that his "uncle" would arrive shortly driving a Cadillac, and in exchange for Fieroh's $4,400, would give Mannarino the cocaine.

Minutes after Mannarino's arrival, a yellow Cadillac, driven by the defendant, in which codefendant, Joseph Irmen, was a passenger, pulled alongside the street curb in front of Svendson's home. Fieroh and Mannarino headed down to the end of the driveway toward the Cadillac, while Svendson straggled a few feet behind. The defendant, Irmen, Fieroh, Mannarino and Svendson participated in or were in a

position to observe and participate in the ensuing drug transaction. Jason "Slick" remained in Fieroh's car more than 100 feet away and was neither present nor participated in any further conversation that evening. The defendant, Irmen and Mannarino had just left defendant's apartment where they obtained the cocaine used in the drug transaction.

While seated in the Cadillac, the defendant and Irmen conversed with Mannarino and Fieroh, who stood outside the car next to the rolled-down passenger window. When Fieroh asked for the cocaine, defendant responded, "We're not dealing with you, we're dealing with him" (indicating Mannarino). When Fieroh renewed his request for the cocaine, the defendant stated to Irmen, "Go ahead and give him the package." Irmen then handed a white envelope containing cocaine to Mannarino, who in turn handed it to Fieroh in exchange for $4,400. Mannarino then hopped into the Cadillac with the defendant and Irmen and drove away. Minutes later, the three were pulled over and arrested.

After the arrest, as the defendant, Irmen and Mannarino stood outside the Cadillac, a fully-loaded revolver in a holster was discovered in the Cadillac's glove compartment. The testimony revealed the glove compartment was unlocked when the car was searched. An arresting officer testified the defendant made no move to acquire the revolver.

After the parties' opening statements, the defendant moved for severance, claiming Irmen's opening statement revealed a defense antagonistic to the defendant's. The court denied this motion. The defendant maintains he was denied a fair trial by the court's refusal to sever his case from Irmen's. The defendant's motion to sever outlined his defense, that the State could not prove him guilty beyond a reasonable doubt. The defendant contended Irmen would testify that Irmen neither provided nor sold the drugs, but that defendant both supplied the drugs and ordered Irmen to transfer the drugs. In fact, Irmen testified that defendant handed him an envelope containing cocaine and instructed him to hand it over to Mannarino. Irmen further testified that he told Fieroh to hand over the money to either the defendant or Mannarino, and not him. He claimed that throughout the transaction, he didn't know a drug deal was actually "going down" but that he only responded to the defendant's orders. Irmen asserted he was involved in the transaction to receive repayment of a loan made to Mannarino. The defendant neither testified nor introduced evidence at trial.

■■ The State argues that the defendant's failure to state why the defense would be antagonistic precludes his right to a severance. The defenses were antagonistic; Irmen's testimony was not critical to the case against the defendant but was merely cumulative, repeating testi-

mony already received from Fieroh and Mannarino.

The court in *People v. Lee* (1981), 87 Ill. 2d 182, established that prior to allowing a severance, a detailed and specific showing of antagonism, including a detailed recitation of what the defendant's defense would be, must be made to the court. (*People v. Lee* (1981), 87 Ill. 2d 182, 188; see, *e.g., People v. Braune* (1936), 363 Ill. 551, 553-54.) The defendant's "mere apprehension" and conclusion that a conflict exists does not meet the *Lee* standard. (See *People v. Yonder* (1969), 44 Ill. 2d 376, 386; see also *People v. Goodman* (1979), 75 Ill. App. 3d 369, 372.) The court in *Lee* called for a severance only when the defendants could not realistically be aligned on the same side. (*People v. Lee* (1981), 87 Ill. 2d 182, 187.) Thus, without truly inconsistent and antagonistic defenses, a severance must be disallowed. 87 Ill. 2d 182, 187-88.

■ *People v. Daugherty* (1984), 102 Ill. 2d 533, 544, suggests that antagonism exists when each defendant denies his participation while simultaneously blaming his codefendant. The facts in *Daugherty* reveal that in a case based wholly upon circumstantial evidence, severance should have been granted where each defendant accused the other of the crime while professing his own innocence. (102 Ill. 2d 533, 545.) The closing argument in *Daugherty* "produced a spectacle where the People *** stood by and witnessed a combat in which the defendants attempted to destroy each other." (*People v. Daugherty* (1984), 102 Ill. 2d 533, 547, citing *People v. Braune* (1936), 363 Ill. 511, 557.) The supreme court in *Daugherty* concluded that based on the information available to the trial judge, the inherent risk of prejudice was apparent and severance should have been granted. 102 Ill. 2d 533, 547.

■■ The facts compelling severance in *Daugherty* are dissimilar to the facts of the instant case. The conflict here bore no resemblance to the outright "finger-pointing" in *Daugherty*. While the codefendant's testimony implicated the defendant in the drug transaction, it did not exonerate his own participation. The codefendant testified that he and Mannarino arranged for a cocaine transaction in which the defendant was the supplier. The codefendant at no time pinned the blame exclusively on the defendant, nor did the defendant blame the codefendant. Meanwhile, the defendant argued as his defense that he was not guilty because the delivery of cocaine was made to Mannarino rather than to Fieroh, as the information charged. He stressed that this fact precluded a finding of his guilt. The court in *Lee* held where a defendant relies solely upon the State's inability to prove him guilty, and the codefendant testifies the defendant forced him to commit the offense charged, the defendant has not been prejudiced by a joint trial and his motion for severance during trial is properly denied. (*People v. Lee*

(1981), 87 Ill. 2d 182, 189.) Thus, following the standards expressed in *Lee* and *Daugherty*, the defendant's defenses are not "classically" antagonistic so as to warrant a severance.

■ Even if the defendant and codefendant's defenses are antagonistic, denial of the severance motion is proper because the codefendant's testimony was merely cumulative of the evidence presented at trial. (See *People v. Lee* (1981), 87 Ill. 2d 182, 189.) Independent of the codefendant's testimony, Mannarino and Agent Fieroh both identified the defendant as the supplier of the cocaine. Mannarino's testimony as to the defendant's role in the delivery of cocaine was consistent with the codefendant's testimony. Fieroh testified the defendant asked Mannarino where the money was for the cocaine deal. After stating that he and his codefendant were dealing with Mannarino and not Fieroh, the defendant directed the codefendant to hand the cocaine to Mannarino, who in turn handed it to Fieroh in exchange for $4,400. At the defendant's direction, Mannarino then hopped into the car with defendant and codefendant and drove away. The defendant was implicated in the drug transaction through direct testimony rather than circumstantial evidence, as in *Daugherty*. Although slight inconsistencies exist, the testimony of both Mannarino and Fieroh established that Fieroh paid for the cocaine and that the codefendant delivered it at the defendant's direction and approval to Mannarino, who delivered it directly to Fieroh.

■ The defendant next asserts the production and identification of the informant was critical in preparing an entrapment defense. The defendant urges that the informant was both a witness and key participant in the drug transaction. This allegation is entirely unsupported by the record. The record reveals the informant arrived with Agent Fieroh at the location of the sale but remained in Fieroh's car for the duration of the transaction. Fieroh testified the informant sat facing the opposite direction in Fieroh's parked car, over 100 feet away from the Cadillac where the sale was made. He was not within hearing range of the transaction. Further, not only did the transaction occur at night, which would have impaired the informant's vision, but also both Mannarino and Svendson stood near to the transaction so as to have blocked the informant's vision.

The facts herein do not coincide with the facts in cases requiring disclosure of the informant's identity. The Supreme Court in *Roviaro v. United States of America* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, held where the informant had taken a material role in bringing about the petitioner's possession of heroin, the identity of the informant must be tendered to the petitioner for preparation of his defense.

The court believed the informant to have taken a material role when the informant was the sole participant with the petitioner in the transaction charged, might be a material witness as to whether the petitioner knowingly transported the drugs as charged, and was the only witness in a position to amplify or contradict the testimony of the government witness. (353 U.S. 53, 64-65, 1 L. Ed. 2d 639, 647-48, 77 S. Ct. 623, 629-30.) Thus, disclosure of the informant's identity was required.

In *People v. Lewis* (1974), 57 Ill. 2d 232, the supreme court enunciated the *Roviaro* standard holding that disclosure would be required when an informer acted in a dual role of informer-participant. (57 Ill. 2d 232, 235.) In *Lewis*, only three persons were present at the alleged drug sale, *i.e.*, the purchasing agent, the defendant, and the informer. (57 Ill. 2d 232, 235.) The court stated since the informer was the only witness in a position to amplify or contradict the testimony of the government witness, the defendant should have been allowed to interview him. *People v. Lewis* (1974), 57 Ill. 2d 232, 238; see also *People v. Thornton* (1984), 125 Ill. App. 3d 316, 318; *People v. Rinaldo* (1976), 34 Ill. App. 3d 999, 1001; *People v. Perez* (1974), 25 Ill. App. 3d 371, 374-75.

The facts herein indicate the informant did not witness the drug transaction; therefore, he was unqualified to testify as to its substance. Further, the record reveals that other people, *i.e.,* Mannarino, Svendson, and Irmen, were present to corroborate or contradict Agent Fieroh's testimony. Their testimony as to the defendant's role in the transaction was entirely consistent with Fieroh's. Finally, defendant's assertion that the informant's identity would have allowed an entrapment defense is meritless. The informant did not know of the defendant prior to the transaction. The testimony revealed the informant had never spoken to the defendant, and no negotiation between the informant and defendant occurred prior to or at the time of the drug transaction. The informant's only involvement in the transaction was to identify the location of the sale, and to indicate the going rate for two ounces of cocaine. Thus, reviewing the facts of this case in a light most favorable to the defendant, the motion for production and identification of the informant was properly denied.

■ The defendant next argues he was denied his right to a fair trial by having to elect his defense five months prior to trial. The defendant stated in his discovery answer that his possible defenses were entrapment, alibi, reduced responsibility, a general denial of guilt, and that the State could not prove him guilty beyond a reasonable doubt. He asserts Supreme Court Rule 413(d) (87 Ill. 2d R. 413(d)) al-

lows him to plead these inconsistent defenses. Citing the committee comments, the defendant contends that notice of defenses to the State "may include alternative and inconsistent defenses." (87 Ill. 2d R. 413(d).) After omitting the alibi defense, the defendant was ordered by the court to determine before trial whether or not he would rely on an entrapment defense. Begrudgingly, the defendant produced a motion which asserted his defense as a general denial of guilt. The defendant insists the court erred in requiring him to elect this defense, and he was thus prejudiced at trial.

In support of his claim, the defendant cites *People v. Gracey* (1982), 104 Ill. App. 3d 133, a case actually supportive of the State's position. In *Gracey*, the defendant failed to reveal *any* defense to the State prior to trial in accord with Supreme Court Rule 413(d) (87 Ill. 2d R. 413(d)). During trial, much evidence as to the defendant's intoxication and propensity for violence was heard. As a sanction for failure to comply with Supreme Court Rule 413(d), the court disallowed the defendant's jury instruction regarding self-defense and intoxication defenses. The appellate court reversed, holding "[b]ecause of the extensive evidence indicating possible intoxication and justification defenses, we feel that exclusion of these defenses produced substantial prejudice to the defendant and that his conviction, without the opportunity to present an adequate defense, represents a possible miscarriage of justice." (*People v. Gracey* (1982), 104 Ill. App. 3d 133, 137.) Unlike *Gracey*, the testimony taken at trial in the present case does not reflect any evidence of entrapment. The defendant herein made no tender of a jury instruction regarding entrapment. There is no evidence in this record which indicates any entrapment.

Since the defendant answered with inconsistent defenses, the court was proper in requiring the defendant to modify his answer with more facts or to elect a defense. Without further information as to witnesses or events, we cannot say that the trial court improperly required the modification of an answer to pretrial discovery in this case. The election of a defense was merely the result of failing to set forth facts or other information required pursuant to the discovery order of the court.

■■ Further, in *People v. Fleming* (1971), 50 Ill. 2d 141, 144, the supreme court stated where the defendant has denied commission of a crime he cannot also plead entrapment as a defense. Such an attempt is logically inconsistent because entrapment requires that the defendant admit commission of the offense yet plead he was tricked, conned, or forced into committing the offense. (See 50 Ill. 2d 141, 144-45.) Recognizing this inconsistency, the court herein acted properly in requiring

the defendant to elect a defense.

■ The defendant next contends that his conviction should be reversed since the State failed to prove his guilt beyond a reasonable doubt. His four theories in support of this contention are, first, that no evidence suggests he delivered the cocaine to Agent Fieroh, second, that the jury was not properly instructed as to the delivery charge, third, that no proof established that he possessed the revolver and, fourth, that no evidence established that he was armed.

In order to sustain a conviction for the offense of unlawful delivery of 30 or more grams of cocaine, the State must prove beyond a reasonable doubt that the defendant knowingly delivered or possessed with the intent to deliver 30 grams or more of any substance containing cocaine. (See Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2).) As the statute indicates, the offense is committed when one delivers cocaine to another. The material element of the offense is delivery, not the identity of the purchaser.

The defendant urges that since he made a delivery to Mannarino and not to Fieroh as charged, he cannot be found guilty. He urges his delivery to Mannarino was a separate transaction in an unrelated conspiracy. In support of his position, he cites *People v. Bueno* (1966), 35 Ill. 2d 545, a case in which the supreme court reversed a conviction because the indictment charged the defendant with a sale of drugs to one person when the sale was actually to another. In *Bueno*, the indictment charged the defendant with the sale of narcotics to Nicoletti when the evidence revealed the sale was made to Wright. The testimony showed that Nicoletti gave money to Wright who, outside the presence of Nicoletti, bought narcotics from the defendant. The court held that because no evidence demonstrated the defendant had any knowledge of the ultimate purchaser, the conviction must be reversed. *People v. Bueno* (1966), 35 Ill. 2d 545, 547-48; see also *People v. Sullivan* (1962), 23 Ill. 2d 582, 583-84 (conviction for sale of heroin to Hart, as charged, reversed where evidence showed the defendant sold to his codefendant who in turn sold to Hart outside the defendant's presence); *People v. Davis* (1958), 13 Ill. 2d 211, 213-14 (reversal of defendant's conviction for selling drugs to minor as charged where drugs were sold to a third person who was not an agent of the minor, and who was not in the company of the minor when the defendant sold the drugs).

■ The record reveals that the defendant delivered cocaine to Mannarino, who immediately handed it to Fieroh. All of the parties were present when this took place and knew Fieroh was the ultimate purchaser. Mannarino was merely a conduit for the transfer to Fieroh.

On a theory of accountability, the State must prove beyond a reasonable doubt that: (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of an offense; (2) this participation must have taken place either before or during commission of the offense; and (3) it must have been the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Schlig* (1983), 120 Ill. App. 3d 561, 570.) The evidence disclosed at trial irrefutably places the defendant at the scene of the drug transaction, and the defendant's behavior reveals that he "shared the common illegal purpose" and made affirmative acts to promote the sale of cocaine. See 120 Ill. App. 3d 561, 570.

■■■ The defendant next claims the court erred in refusing to tender his instruction to the jury relating to the delivery charge. The jury was given an Illinois Pattern Jury Instruction relating to the delivery. The defendant's instruction read, in part, "to sustain the charge of delivery *** the State must prove that the defendant knowingly delivered *** cocaine *** to Wayne Fieroh." The defendant maintains he was deprived his theory of defense by the court's refusal to tender this instruction which named Fieroh.

The statute mandates a conviction when a defendant knowingly delivers or possesses with the intent to deliver 30 grams or more of cocaine. (See Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2).) The record reveals the defendant knew Fieroh to be the purchaser of the cocaine. Because the record reveals no factual basis which could support the defendant's instruction, the defendant was not prejudiced by the trial court's giving of the IPI instruction, and its refusal of his instruction, which named Fieroh.

■■■ The defendant next argues he was not proved guilty beyond a reasonable doubt of possession of the revolver because no evidence reveals that he knew the loaded revolver was in his glove compartment. The State suggests the defendant retained constructive possession of the revolver. Where the defendant does not have personal physical possession, yet has the intent and capability to maintain control and possession, and the defendant knows of the presence of the weapon, the defendant can be said to have constructive possession. *People v. Turnbeaugh* (1983), 116 Ill. App. 3d 199, 205; *People v. McNeely* (1981), 99 Ill. App. 3d 1021, 1023-24.

■■■ The defendant owned and was driving the Cadillac in which the revolver was found. The defendant had exclusive control of the Cadillac, which shows he had constructive possession of the revolver. (See *People v. McNeely* (1981), 99 Ill. App. 3d 1021, 1025.) Further, the evidence indicates he had only one passenger, the codefendant, in the

front seat of the car nearest to the glove compartment. The testimony reveals this passenger was only a recent acquaintance of the defendant, and was only in the defendant's car at the defendant's suggestion. The defendant would have had the opportunity to observe the codefendant's behavior while in his car. No evidence was produced that indicated the codefendant had anything to do with the revolver in the glove compartment. Given these facts, it may be concluded that the defendant knew of the revolver's location in the glove compartment and constructively possessed it.

■■ The defendant also maintains that his conviction of armed violence must be reversed because he was not armed during his delivery of cocaine. The evidence adduced at trial establishes that at the time of the drug sale, the defendant was seated in the driver's seat of his Cadillac only a few feet away from the glove compartment where the revolver was located. Arguably, if the sale had gone "sour," the defendant had ready access to his weapon. The evidence reveals the glove compartment was unlocked, and the fully loaded revolver was positioned in a shoulder holster. In *People v. Smith* (1978), 71 Ill. 2d 95, a case bearing similarity to the facts herein, the court concluded that a revolver was immediately accessible to the defendant even though it was found in a locked glove compartment in his car; the defendant was found neither to be inside the car nor to have the key. (71 Ill. 2d 95, 101-02.) The court held that for purposes of section 24 (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(10)), a weapon is "immediately accessible" if it is in such proximity to the accused as to lie within easy reach so that it is readily available for use. *People v. Smith* (1978), 71 Ill. 2d 95, 101-02; see also *People v. McKnight* (1968), 39 Ill. 2d 577, 580-81.

The court in *People v. Haron* (1981), 85 Ill. 2d 261, 268, held the "mere physical presence of a weapon while a crime is being committed is thought to be a sufficient threat to warrant proscription" of the charge of armed violence. Based upon the evidence at trial, the State proved the defendant guilty beyond a reasonable doubt of armed violence.

■■ ■ The defendant further argues he was unfairly denied his right to a fair trial when a potentially prejudicial newspaper article was read by three jurors during trial. The facts adduced at trial indicate that the article concerned the smuggling of cocaine by persons referred to as "mules," whereby the "mules" would ingest balloons filled with cocaine and then carry the contraband into the United States. The article referred to the gruesome deaths suffered by these couriers when the balloons exploded in their stomachs. The substance of the article is entirely unrelated to the facts of this case. Further, no evidence sug-

gests that "mules" were in any way employed by the defendant. Nonetheless, the record reveals that the trial court was alarmed at the potential prejudice the article could have on the jurors. Thus, the court interrogated the jurors as a group. Through questioning, the court found three jurors who had seen or read the articles. The court then questioned those jurors individually, and outside the presence of the other jurors. Through this polling, the court was assured that the jurors would be able to render a fair and impartial verdict. The court then admonished the jury to consider solely the evidence and testimony heard in the case in rendering their verdict.

When an allegation of prejudicial publicity is raised, it is the trial court's duty to examine the nature of the publicity to determine its potential for prejudice. (*People v. Perez* (1981), 98 Ill. App. 3d 64, 67.) If the court finds the publicity to be potentially prejudicial, then a polling of the jurors must occur; however, if the court determines the publicity is not prejudicial, there is no need to poll the jury. (*People v. Perez* (1981), 98 Ill. App. 3d 64, 67; see also *People v. Cole* (1973), 54 Ill. 2d 401, 414-15; *People v. Knippenberg* (1979), 70 Ill. App. 3d 496, 499-500.) No prejudice results to the jurors where the allegedly prejudicial article does not refer to the defendant or the cause specifically, but only to a general class of offenders. (*People v. Fowler* (1981), 98 Ill. App. 3d 202, 205; *People v. Perez* (1981), 98 Ill. App. 2d 64, 67.) Where the presumably prejudicial articles bore no direct relation to the defendants and the charges against them, the jury need not even be polled. *People v. Fowler* (1981), 98 Ill. App. 3d 202, 204; *People v. Perez* (1981), 98 Ill. App. 3d 64, 67.

■■■ The facts herein reveal the nature of the allegedly prejudicial article was unrelated to the defendant and the charges against him. Even so, when the court became aware that a few jurors may have read the possibly prejudicial article, the court took the precautionary measure of a thorough questioning of those jurors. Subsequently, the court became convinced that the jurors would render a fair verdict. After thoroughly admonishing the jurors to consider only the evidence and testimony in the case, the court denied the defendant's motion for mistrial and the trial proceeded. The defendant was afforded a fair trial, and the trial court did not abuse its discretion in denying defendant's motion for mistrial.

The defendant's conviction is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.